Argued April 3, 1968, reversed and remanded February 13, 1969

RAMSTEAD, *Appellant, v.* NORTH-WEST
INSURANCE COMPANY, *Respondent.*

450 P. 2d 538

*J. Michael Starr,* Eugene, argued the cause for appellant. On the briefs were Sahlstrom & Starr.

*William E. Flinn,* Eugene, argued the cause for respondent. On the brief were Jaqua, Wheatley & Gardner.

Before PERRY, Chief Justice, and MCALLISTER, O'CONNELL, DENECKE and LANGTRY, Justices.

## McALLISTER, J.

This is a suit to reform a policy of automobile liability insurance and to recover on the policy as reformed. The trial court denied relief and plaintiff appeals.

There is no dispute about the facts, most of which were stipulated. The defendant North-West Insurance Company is an Oregon corporation engaged in writing automobile insurance in Oregon. North-West wrote all its Oregon business through its general agent Meridian, Inc., which was its only licensed agent in Oregon. North-West and Meridian occupied the same offices in Portland and, for the purposes of this case, Meridian was North-West's alter ego.

Arnold Dunsworth lived in Cottage Grove and owned a 1951 Plymouth and a 1955 Buick.[1] Prior to October 3, 1964, Dunsworth obtained liability insurance on both vehicles in separate policies issued by a Farmers Insurance Group company through George B. Schwieger, Jr., its agent in Eugene. The Schwieger agency was represented by its salesman, Robert D. Spence. On October 3, 1964, Dunsworth requested the Schwieger agency to cancel the insurance on the Plymouth because it had broken down and was no longer operable. The policy was cancelled.

On October 22 Spence notified Dunsworth by telephone that Farmers was cancelling the policy covering the Buick. Spense told Dunsworth that: "We could process an application through North-West" and Dunsworth asked Spence to insure the Buick. On the same day Spence filled out, on a form provided by North-West, an application for a policy insuring Dunsworth against liability and property damage for the basic limits. In the application Spence, by mistake, described the Plymouth as the vehicle to be insured instead of the Buick. Spence knew that the Plymouth was broken down, but carelessly obtained the car description from the wrong prior policy. Immediate coverage was effected on October 22 by a telephone call from the Schwieger agency to Meridian, who agreed to bind the risk for five days pending receipt of the application. A written binder was executed by Meridian on October 22 and a copy mailed to Schwieger. Later the policy involved in this suit describing the Plymouth as the insured vehicle was issued by North-West and mailed to Schwieger.

On October 24 Dunsworth turned over to the

---

[1] Dunsworth apparently was not the sole owner of the Buick, but that fact is not material here.

Schwieger agency two refund checks on his prior policies which substantially paid the premium on the new North-West policy.

On October 25, 1964, Dunsworth was involved in an accident while driving his Buick. As a result of the accident four actions for damages were brought against Dunsworth and were defended by North-West under a reservation of rights agreement. The lawsuits were terminated by the entry, with the consent of North-West and Dunsworth, of judgments in favor of the four plaintiffs for a total of $10,000. North-West then denied liability on the sole ground that its policy did not cover the Buick involved in the accident. Thereafter Dunsworth assigned all of his interest in the policy to the plaintiff Gordon A. Ramstead, who brought this suit to reform the contract to describe the Buick as the insured vehicle. Plaintiff also prayed for an allowance of attorney's fee.

The case turns on whether the Schwieger agency was an agent of North-West. Both George B. Schwieger, Jr., and his employee Spence were licensed agents of the Farmers Insurance Group and apparently were engaged primarily in writing for Farmers. Neither was licensed by North-West, which had no licensed agent in Oregon except its general agent, Meridian, Inc.

However, for a period of two or three years Schwieger had been doing business for North-West through Meridian, Inc. Apparently the insurance written with North-West consisted of insurance risks that Farmers had declined to write or, as in this case, had cancelled.

Meridian produced business for North-West from agents such as Schwieger by sending to them application forms, rate cards and related information. The

correspondence with the agents was supplemented by the use of field men who apparently called on the agents. Schwieger had an open account with Meridian and "he was billed for each policy written with the company at the end of the month."[2] Meridian looked to Schwieger for payment of the premiums and had no direct contact with the insured. The premium for Dunsworth's policy was billed to Schwieger by Meridian and paid for by Schwieger in accordance with the usual practice.

Local agents such as Schwieger could bind North-West on a risk by filling out an application indicating thereon the date and hour the application was prepared and mailing it so it would be postmarked the same day. Under those circumstances Meridian, Inc., agreed to "bind coverage as of the hour indicated." If the application was not mailed on the same day, Meridian agreed that coverage would be bound on a date and at a time determined by the postmark.[3] In

---

[2] Quoted from the testimony of Jay H. Spear, who was employed by Meridian, Inc., as underwriting manager, who also testified:

"Q And as underwriting manager, you knew that many of these applications had been procured by salesmen, rather than the agent, the supervisor of the agency, did you not?

"A We knew that the business was produced from solicitors operating out of our *local agent's office,* yes. And the business transacted by Meridian was done with the local agent, himself, and he was responsible for the activities of his solicitors.

"Q So everything would be done through the producer's name. In this case Schwieger, rather than the individual salesman, is that correct?

"A That's right.

"Q And this was normal procedure?

"A Yes." (Italics added.)

[3] The rate card issued by Meridian contained the following:

"GENERAL RULES

"APPLICATIONS—Use the North-West Insurance Co. Application. Important—SUBMIT IN DUPLICATE.

the case of Dunsworth's policy the Schwieger agency made certain that coverage would be effective immediately by a telephone call to Meridian.

North-West contends that neither Schwieger nor his salesman Spence were agents of North-West because they had not been authorized in writing to act as its representatives pursuant to the applicable statutes. Defendant's contention is stated in its brief as follows:

"In the case at bar, neither the producing agent, George B. Schwieger, nor his employee, Robert D. Spence, were authorized in writing to act as agents of the Defendant in October of 1964. Nor did either of them receive an agency appointment or license from the Defendant as specified in ORS 736.405 to 736.425. Therefore, neither of them had authority to negotiate contracts of insurance on behalf of the Defendant, nor did either have the power to bind the Defendant by their negotiations or representations."

The statutes on which North-West rests its case

---

"**EFFECTIVE DATE**—Private Automobiles—If the producer will indicate date and hour the application was prepared and mail it so that it will be postmarked that same day, MERIDIAN, Inc. will bind coverage as of the hour indicated. Otherwise, if postmark shows A.M., coverage will be bound as of 12:01 P.M. same date. If postmark shows P.M., coverage will be bound as of 12:01 A.M. following postmark date. (Example: Postmark shows mailed on March 15, 1964 A.M. Coverage is effective at 12:01 P.M., March 15, 1964. Postmark shows mailed on March 15, 1964 P.M. Coverage is effective at 12:01 A.M., March 16, 1964.) If no postmark (metered) then only upon date received by MERIDIAN, Inc.

"COMMERCIAL VEHICLES—Not rated as private passenger automobiles—bound only upon issuance of policy or binder by MERIDIAN, Inc."

are ORS 736.005 (3) (e) and 736.425 (2) as effective in October, 1964.[@]

ORS 736.005 (3) (e) defines an insurance agent as follows:

> " 'Insurance agent' or 'agent' means a person authorized in writing by any insurance company lawfully authorized to transact business in this state to act as its representative, with authority to solicit, negotiate and effect contracts of insurance in its behalf, * * *."

ORS 736.425 (2):

> "No agent shall have authority to represent or bind any insurance company except a company for which he holds an agency appointment and license duly issued as required by ORS 736.405 to 736.425."

▮▮ We do not agree that an insurer can only be bound by the acts of an agent appointed by the insurer in writing pursuant to ORS 736.005 and related statutes. To so hold would allow a company to do business through agents not authorized in writing, to accept the benefits of the relationship, and to escape the burdens thereof by taking advantage of its own wrong in failing to formally appoint its agents as required by law. The applicable rule is stated simply in 16 Appleman, Insurance Law and Practice 133, § 8671, as follows:

> "Statutes requiring the registering or licensing of insurance agents have no effect on their powers to bind their principals, and do not change the general laws of agency."

The above rule was applied in the following cases in which the contention was made that the insurer was not bound by the acts of its agent because the agent was not licensed as required by law: *Fireman's Fund*

---

[@] ORS 736.005 (3) (e) and 736.425 (2) were repealed by Chapter 359, Laws of 1967, which enacted a new Insurance Code.

*Ins. Co. v. Leftwich,* 192 Ark 159, 90 SW2d 497 (1936);
*Old Line Automobile Insurors v. Kuehl,* 127 Ind App
445, 141 NE2d 858 (1957); *Mathews v. Marquette
Casualty Company* (La App, 1963) 152 S2d 577, at
582; *American Bankers' Ins. Co. v. Lee,* 161 Miss 85,
134 So 836 (1931); *Farrington v. Granite State Fire
Ins. Co.,* 120 Utah 109, 232 P2d 754 (1951); *Coverdill
v. Northern Ins. Co.,* 243 Mich 395, 220 NW 758 (1928);
*Houston Fire & Casualty Insurance Co. v. Jones,* 315
F2d 116 (10th Cir. 1963).

In *Fireman's Fund Ins. Co. v. Leftwich,* supra, the
court said:

> " 'It seems settled that statutes such as those
> quoted supra are not intended to, and do not, have
> any effect upon the agent's powers to bind the
> principal, nor do they change the general laws of
> agency, the powers of an agent being and remain-
> ing those only which his principal has expressly or
> impliedly conferred upon him to be determined by
> the applicable principles of the common law relat-
> ing to principal and agent.' " 90 SW2d at 499.

From *Farrington v. Granite State Fire Ins. Co.*
we take the following:

> "We deem it unnecessary to set forth a detailed
> analysis of the various sections of the Code because
> it was enacted primarily for the purpose of regu-
> lating insurance companies, agents, brokers, solic-
> itors and adjusters. It was not intended to change
> or control the ordinary rules of agency between in-
> surance companies and the public with whom they
> deal. If Bowman's conduct was in fact that of an
> agent for defendants, the licensing and regulatory
> provisions of the statute would not change that re-
> lationship so far as the plaintiff was concerned."
> 232 P2d at 756.

In *Coverdill v. Northern Ins. Co.,* supra, the court,

in disposing of the same contention as made by the defendant in this case, said:

"Although the statute makes it unlawful for one to act as an insurance solicitor without a license (section 5, subd. 1, chap. 3, pt. 2, Act No. 256, Pub. Acts 1917 * * *), this statute must be construed to protect policy holders, and not to defeat their rights." 243 Mich at 397-398.

Defendant relies on *Salquist v. Oregon Fire Relief Assn.,* 100 Or 416, 197 P 312 (1921). That case involved a condition required by Oregon Laws (Olson, 1920) § 6457, to be contained in every fire insurance policy, which condition read as follows:

"In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company."

In construing the condition the court said:

"The deduction is that, if anyone assuming to act for an insurance company in this state, undertakes to effect insurance, his authority to do so must be in writing."

Although *Salquist* can be distinguished on the facts, it is difficult to distinguish the sweeping language used by the court. Insofar as the *Salquist* case is inconsistent with our opinion in this case it is expressly overruled. The defendant also relies on *West v. Metropolitan Life Ins. Co.,* 144 Kan 444, 61 P2d 918 (1936), which contains language similar to that used by this court in *Salquist,* which we decline to follow.

We find no merit in defendant's contention that even under common law principles Schwieger was not defendant's agent. It is undisputed that for two or three years Schwieger had been producing insurance business for defendant. Schwieger was authorized to solicit the business, bind the company, deliver the

policies, and collect the premiums. Schwieger deducted his commission from the premium and paid the balance to defendant. It is clear from the record that Schwieger was authorized by defendant "to solicit, negotiate and effect contracts of insurance in its behalf," and, insofar as the public is concerned, no formal authorization in writing pursuant to ORS 736.005 (3) (e) would have enlarged the actual authority vested in the agent.

In defendant's application, binder, policy, and other forms, Schwieger was described as the "Producer," but the use of that term is not significant. At most, it is some evidence of defendant's contention that Schwieger was not an agent. We note, however, that Meridian's underwriting manager referred to "our local agent's" office. The only local agents which defendant had were agents such as Schwieger and labeling them producers could not change their status.

■■ The question whether Schwieger was an agent is one of fact. This is a suit in equity in which this court tries the case de novo. We find by a clear preponderance of the evidence that Schwieger was the agent of the defendant.

Defendant concedes that the disposition of the remaining issues raised in its brief depends on the answer to the primary question of whether Schwieger and his salesman Spence were agents of the defendant. Since Schwieger was defendant's agent, defendant is responsible for the mistake of its agent and the policy should be reformed to cover the Buick.

The case is reversed and remanded for the entry of a decree consistent herewith and for a determination of plaintiff's right to an attorney fee and the amount thereof.