Argued April 5, affirmed April 26, 1972

ARLEY ᴇᴛ ᴜx, *Respondents, Cross Appellants, v.*
CHANEY ᴇᴛ ᴀʟ, *Defendants,* NELSON, *Appellant.*

496 P2d 202

*Floyd Hinton,* Portland, argued the cause for appellant. On the briefs were Deich, Deich and Hinton, Portland.

*Carlton D. Warren,* Portland, argued the cause and filed a brief for respondents.

Before O'Connell, Chief Justice, and McAllister, Denecke, Holman, Tongue and Howell, Justices.

TONGUE, J.

This is an action against an insurance agent and one of his insurance salesmen for breach of contract to procure a policy of fire insurance on property in Nevada after an "oral binder" by the salesman. Thus, when plaintiffs requested the salesman to arrange for fire insurance on that property, the salesman assured plaintiffs that he would "take care of it" and that they were "covered." In fact, however, he did not make arrangements for issuance of such a policy until more than three months later and after plaintiffs had

notified him of the loss. The insurance company, upon learning that the loss occurred prior to issuance of the insurance policy, cancelled the policy.

The complaint was in two counts: Count I alleged the breach of a contract of insurance and joined United Pacific Insurance Company as a defendant, in addition to defendant Larry C. Nelson, dba Larry C. Nelson General Agency, and defendant Chaney, a solicitor for Nelson. Count II alleged the breach of a contract to procure insurance.

The case was tried before the court, without a jury. The complaint was dismissed as against United Pacific Insurance Company. Judgment was entered in favor of plaintiffs and against both the salesman, Roger A. Chaney, and also against the insurance agent, Larry C. Nelson, who is the sole appellant in this court.

1. *The complaint was sufficient on demurrer.*

■■ Defendant Nelson first contends that the trial court erred in overruling his demurrer to the complaint on the ground that because it alleges that he was the general agent for a disclosed principal, the United Pacific Insurance Company, and alleges no limitations on his authority as agent, he cannot be held personally liable to plaintiffs because of the rule that an insurance agent is not personally liable to the insured if, with authority to do so, he effects a binding contract of insurance between his disclosed principal and the insured and one which conforms to the agreement between the agent and his insured, in the absence of an express understanding to the contrary, citing *Leavens v. Northwestern Mutual Ins.*, 249 Or 418, 421, 439 P2d 17 (1968), among other authorities.

That rule may apply in an action upon a con-

tract of insurance, as alleged in Count I of this complaint, because in such an action the insurance company is the named contracting party to the insurance contract and is thus the party responsible for a breach of that contract.

Such a rule has no application, however, in an action against an agent for breach of an agreement to procure a policy of insurance because such an action involves an agreement in which the agent has contracted directly with the person for whom he has agreed to procure the insurance. Although Count II of this complaint adopted by reference some of the allegations of Count I, including reference to Nelson as an agent of United Pacific, that was not a material allegation in Count II. That count also adopted by reference the allegation that Chaney "was a solicitor and agent only of Larry C. Nelson General Agency" and alleged that Chaney and Larry C. Nelson Agency agreed with plaintiffs to procure and have issued a policy of fire insurance and failed to do so. These alleged facts were sufficient to constitute a cause of action against both Nelson and Chaney for breach of a contract to procure the issuance of a policy of insurance. Cf. *Franklin v. Western Pac. Ins. Co.,* 243 Or 448, 453, 414 P2d 343 (1966).

It is also clear that Count II was understood at the time of trial as proceeding on that theory, despite defendant Nelson's present contention as to the legal effect of its allegations, and no objection was made to submitting that theory to the court for decision under the allegations of Count II. Cf. *Leavens v. Northwestern Mutual Ins., supra,* and *Anderson Feed & Produce Company v. Moore,* 66 Wash 2d 237, 401 P2d 964, 967 (1965). The trial court did not err in overruling the demurrer, at least to Count II.

2. *There was sufficient evidence that Chaney had apparent authority as a salesman for Nelson to procure insurance to be issued through Nelson as a general insurance agent.*

Defendant Nelson contends that "the court erred in holding that a legal relationship existed between Nelson and plaintiffs, a breach of which made Nelson contractually liable to plaintiff."

In support of that contention defendant Nelson first says that to hold him liable there must have been a duty breached by him either (a) as agent for United Pacific, or (b) as the agent of plaintiffs in procuring insurance.

Plaintiffs make no contention that under Count II Nelson was liable as agent for United Pacific. They contend that Chaney, in agreeing to procure insurance for them and in assuring them that they were "bound," or covered, was acting as agent for the "Larry C. Nelson General Agency" as a disclosed principal within the apparent, if not actual, scope of his authority and that Nelson was therefore liable for breach of the agreement to procure insurance, as made by Chaney.

Defendant Nelson, in response, denies that Chaney had "any implied authority relied or acted upon in which plaintiffs believed or had reasons to believe that they were looking to the Nelson Agency or Nelson to procure such insurance as their agent." In support of that contention Nelson refers to testimony of Mrs. Arley that she was dealing directly with Chaney, as she had before he went with the Nelson Agency; that it was not her understanding that he was working for someone else, and that upon learning that he was a solicitor for the Nelson Agency she was put

on inquiry as to the extent of his powers, but made no such inquiry, thus charging her with knowledge of the extent and limitation of his powers.

It thus becomes necessary to review the evidence on this subject. Mr. Chaney began selling insurance in 1957. On January 1, 1961, he became an insurance solicitor for the Nelson Agency in Portland. Nelson was a general agent for five or six insurance companies. During 1962 and 1963 Chaney solicited insurance for Nelson and for no one else. His duty was to seek out customers and sell insurance, which was then handled through the Nelson Agency. Chaney developed his own customers to whom he sold insurance and advised on insurance matters. He testified that Nelson was aware of the manner in which he conducted business.

Policies were signed by Nelson or in his name by his secretary and statements for premiums were mailed out by the Nelson Agency. On all insurance sales Chaney was paid one-half of the commission and Nelson retained the remaining one-half. Nelson exercised control or direction over "who [Chaney would] contact [for the sale of fire and casualty insurance] and what type of business he was soliciting or attempting to sell."

Nelson admitted that in 1962 it was customary in Oregon in selling fire insurance for either him or Chaney to tell the insured that he was "covered" (i.e., by an "oral binder"). The policies would then be issued later and dated back to that date for premium purposes.

Chaney testified that although his solicitor's license was limited to Oregon, he could also "bind" coverage on property outside Oregon. In such event,

however, an insurance salesman would get no share of the commission unless his agency had a nonresident license. Prior to May 1962 Nelson had a nonresident license, but it was not renewed after that date. Nevertheless, according to Chaney, the Nelson Agency would arrange with an insurance company to issue insurance on property outside the state on an "accommodation basis," without commission.

Mr. Chaney first sold insurance to plaintiffs before becoming an insurance solicitor for Nelson. In the years 1961-62, while with Nelson, he sold a "floater" insurance policy to plaintiffs. That policy was signed with the name "Larry C. Nelson," by his secretary, and had a "stamp" or "sticker" on the cover with the words "Larry C. Nelson General Agency, Insurance Consultants." A statement for the premium was mailed to plaintiffs under this same name and was paid by plaintiffs' check made payable to "Larry C. Nelson General Agency." Nelson was aware of that floater policy for plaintiffs and also of an automobile policy sold by Chaney to plaintiffs, who made premium payments to the Nelson Agency for such policies. During that period, however, Nelson never talked directly to plaintiffs except to answer inquiries when they called the office for Chaney and he was out.

Plaintiffs purchased the property involved in this case, located near Reno, Nevada, in about 1953 and at that time arranged for fire insurance through a Nevada agent. In late October 1962, upon the delivery by Chaney to Mrs. Arley of the "floater" policy she told him that they had realized that they then had no fire insurance on the property at that time and asked him if he would cover it, saying that she was leaving town the next day. Mrs. Arley testified that

she gave Chaney a "memorandum" relating to the former fire insurance on the property and asked him to place $22,500 of insurance on it and that he said that "he would take care of it"; that she should "not worry" and "was covered." She also testified that in December 1962 she called Chaney again and was told that he had "taken care of it" and that she was "covered." Chaney testified to the same effect. Chaney never told plaintiffs that he was not licensed to sell insurance on property outside Oregon.

Mr. Chaney testified, however, that he believed that coverage could be obtained on the property. He then asked Mr. Nelson to place coverage on the Nevada property and was told that Nelson did not intend to renew his nonresident license and was not particularly interested in the "Arley business." At that time Chaney informed Nelson that he had told Mrs. Arley that he assured her of coverage. Nelson testified that he told Chaney to call her and tell her that he could not do so. Neither Chaney nor Nelson did so, however.

Chaney admitted that he knew that despite his "oral binder," no insurance company was bound to issue fire insurance on property in another state unless the matter was discussed with that company. He claimed, however, that he "had specifically discussed it [the Nevada property] with someone in the underwriting department." He also testified that he discussed the matter again with Nelson prior to the loss, but could not recall the particulars except that he was "not desirous of having the business." Nelson recalled that in early January Chaney asked again where he might place the coverage and was told that if Chaney wanted to accommodate Mrs. Arley by going elsewhere to place the business Nelson had no objection and no authority to tell him that he could not do so.

On January 15, 1963, the house on the property burned. The next day Mrs. Arley called Mr. Chaney to ask if written notice of loss was necessary. He told her that it was not necessary and that he would "take care of it." Chaney then arranged for United Pacific to issue a predated insurance policy. He also reported to Nelson, told him of the loss and that it was "taken care of." Nelson testified that he made no objection and that companies sometimes will issue policies on out of state property as an "accommodation."

That policy was signed by a Nevada agent, but was then delivered to plaintiffs through the Nelson Agency, with the same "stamp" or "sticker" entitled "Larry C. Nelson General Agency, Insurance Consultants." A premium statement was then mailed to plaintiffs by the Nelson Agency for $22,500 in fire insurance on "Nevada ranch" and plaintiffs remitted their check in payment for that premium. The policy was then cancelled by United Pacific upon learning that it had been issued after the loss. Mr. Nelson said that he did not know until later that the policy had "passed through the office."

After considering this testimony the trial judge made an oral finding that there was "* * * a sufficient holding out by Nelson of Chaney's authority and power to make Chaney's conduct with respect to the binding of the policy, imputable to Nelson * * *" on the basis of "apparent authority." After reading the testimony, we agree.

██ Defendant Nelson contends that even if he held out Chaney as having authority to enter into a contract to procure insurance on property in Oregon, plaintiffs were required, as a matter of law, to know that Chaney had no authority to enter into a contract to procure

insurance on property in Nevada because Nelson had no nonresident license. Where an agent is authorized to take insurance risks in one place, it is to be presumed that he has authority to take risks on property at other places. *Hahn v. Guardian Assurance Co.*, 23 Or 576, 580, 32 P 683 (1893); and 3 Couch on Insurance 521, § 26:55. As held in *Ramstead v. Northwest Ins.*, 252 Or 423, 429, 450 P2d 538 (1969), quoting with approval from 16 Appleman, Insurance Law and Practice 133, § 8671:

> "Statutes requiring the registering or licensing of insurance agents have no effect on their powers to bind their principals, and do not change the general laws of agency."

■■ The trial court could properly find from the testimony in this case that Chaney had at least ostensible authority to enter into an agreement to procure insurance on the Nevada property, at least on an "accommodation" basis.[1]

■ Finally, defendant contends that after United Pacific was "let out of the case" the trial court concluded that Chaney was personally liable and that such a conclusion could not be based on the theory that he was acting as agent for either United Pacific or Nelson because if he acted within the scope of his authority for a disclosed principle he could not be held personally liable. Thus, Nelson contends that the trial court must

---

[1] Defendant Nelson also says that since plaintiffs had previously dealt with Chaney as an independent agent, they had the duty to inquire as to his powers and authority after he became a solicitor for the Nelson Agency. Again, however, there was ample evidence to support the finding that after Chaney became a solicitor for that agency, Nelson held him out as having ostensible authority to sell insurance for that agency, including the authority to make "oral binders" and to enter into agreements to procure insurance through that agency.

necessarily have found that Chaney was the agent of plaintiffs, rather than of United Pacific or Nelson Agency, with the result that Nelson cannot properly be held to be liable to the plaintiffs in this case.

It may be true that if plaintiffs' recovery in this case must depend solely upon a theory of the breach of a contract to procure insurance, in which the liability of Nelson for breach of the "oral binder" by Chaney must rest upon his responsibility as the principal of an agent who acted within the scope of his actual or apparent authority, the trial court might not be able to properly hold both Nelson to be liable as principal and also Chaney as his agent. This is because, in such an event, the resulting contract would be the contract of the principal for which he alone was liable for the breach of that contract. See Restatement (Second) of Agency 80, § 328.

Since, however, defendant Chaney has not appealed from the judgment of the trial court, defendant Nelson may not complain that the trial court may have erred in entering judgment against Chaney, since there was ample basis, both in fact and in law, to hold Nelson liable on a breach of contract theory as the principal who was responsible for Chaney's conduct as his agent, for reasons already stated.

Moreover, it may be that under the facts of this case plaintiffs were also entitled to recovery on the tort theory that both Chaney and Nelson were plaintiffs' agents to procure insurance and were negligent in the performance of that duty. Cf. *Anderson Feed & Produce Company v. Moore, supra.* Under such a theory plaintiffs could recover against both Chaney and Nelson upon proof that both of them were

plaintiffs' agents. The evidence in this case was also sufficient to sustain recovery on such a theory.[⊛]

3. *The court did not err in admitting testimony of the value of the property when originally purchased by plaintiffs.*

■ Defendant's final assignment of error is that the court erred in not striking the testimony of an expert witness who testified that the value of the house on the property when originally purchased by plaintiffs in 1953 or 1954 was $15,000 and who did not make an appraisal of the loss or damage after the fire.

No objection, however, was made to any of such testimony until after the completion of the direct examination of the witness. In addition, plaintiffs had previously testified to various substantial improvements made by plaintiffs to the house after purchasing it, as well as their opinion, as owners, that its value at the time of the loss was $17,500. They also offered photographs showing the nature and extent of the serious damage to the house and testified that "it was gutted and impossible to repair," i.e., a total loss. The trial judge awarded damages in the sum of $10,500.

The testimony of plaintiffs' expert witness might not have been admissible on proper objection in a trial before a jury. (But see *Douglas County v. Meyers et al,* 201 Or 59, 65, 268 P2d 625 (1954).) Under these circumstances, however, we do not believe that any error in receiving it was prejudicial error.

---

[⊛] If plaintiffs were limited under Count II of the complaint to recovery on such a theory of tort liability, defendants might have demurred to the complaint for misjoinder of Count I, as a contract count, and Count II as a tort count. No demurrer was filed on that ground, however.

■ Finally, plaintiffs contend, as a cross-appeal, that the trial court erred in failing to allow interest from a date 60 days after the loss, as in an action on an insurance contract, instead of from the date of the judgment. Since, however, plaintiffs' complaint did not pray for such interest, the trial court did not err in rejecting that contention regardless of whether or not it otherwise should have been allowed. See *Obermeier v. Mortgage Co. Holland-America,* 123 Or 469, 481, 259 P 1064, 260 P 1099 (1927); and *Ferguson v. Reiger,* 43 Or 505, 512, 73 P 1040 (1903).

The judgment of the trial court is affirmed.