Argued and submitted February 6, affirmed in part, reversed in part, and remanded for further consideration and modification September 18, petition for rehearing denied October 23, 1979

# HOLMAN TRANSFER COMPANY,
*Respondent,*

*v.*

# PACIFIC NORTHWEST BELL

# TELEPHONE COMPANY,
*Appellant.*

(TC A7601 01148, SC 25398)

599 P2d 1115

[388]

[388-a]

E. Joseph Dean, Portland, argued the cause and filed the briefs for appellant. With him on the briefs were Davies, Biggs, Strayer, Stoel and Boley, Portland.

Edwin J. Peterson, Portland, argued the cause for respondent. With him on the brief was Paul R. Duden and Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

Before Denecke, Chief Justice, and Holman, Howell, Lent and Linde, Justices.

LENT, J.

**LENT, J.**

This is an action arising out of alleged overcharges which defendant Pacific Northwest Bell Telephone Company ("Bell") collected from plaintiff, a commercial telephone service customer, over a period of more than six years. During that time plaintiff used a PBX switchboard system furnished by Bell. The disputed charges came to light in 1974 when plaintiff hired John Ball, a former Bell employee who had established his own consulting firm, to study its telephone system and the company's needs in order to help determine whether plaintiff should change to some other type of system.

During his study Mr. Ball discovered that plaintiff had been charged for various items of equipment which had not been installed. He also came to the conclusion that Bell had knowingly provided plaintiff with more trunk lines than were required to serve plaintiff's needs. He further concluded that Bell had installed one trunk line in such a way that it was of no use to plaintiff unless plaintiff's personnel knew it was there and had failed to inform plaintiff of its presence. Plaintiff filed this action to recover damages for what it claimed were overcharges for each of these items, and the jury found in its favor.[1] The trial court entered judgment for treble damages and attorney fees pursuant to ORS 756.185. Bell appeals.

Bell does not dispute its liability for charges which were mistakenly billed for equipment which it had not provided. It does, however, contend that it is not liable for the charges it collected for what plaintiff contends were unnecessary trunk lines (the "overtrunking" claim) or for the trunk line of which plaintiff was unaware ("lost trunk" claim). As to all three categories of overcharge claims, Bell contends that in any event

---

[1] Mr. Ball also discovered that plaintiff had been undercharged for certain items. The parties could not agree on the extent of the undercharges, and they were at issue in the trial court upon Bell's counterclaim. They are not, however, involved in this appeal.

the trial court erred in awarding treble damages and attorney fees. It further argues that some of plaintiff's claims are barred by the statute of limitations and that the jury should not have been permitted to find that Bell was estopped to rely on the statute. Finally, Bell challenges the trial court's award of prejudgment interest on the amounts of the overcharges.

We will examine first those assignments of error which are of general application to the entire case, and then proceed to contentions involving only specific items.

*Estoppel to rely on the statute of limitations*

Bell alleged in its answer that portions of plaintiff's claim are barred by the three-year period of limitations provided in ORS 12.100(2)[2] or, alternatively, by the six-year period provided in ORS 12.080(1).[3] In reply, plaintiff alleged that Bell was estopped to rely on the statute of limitations because Bell had falsely represented to plaintiff both that Bell had provided plaintiff with all of the services for which it was charged and that plaintiff required more service than was actually needed. Plaintiff further alleged that Bell made those representations with knowledge that they were false, that plaintiff was ignorant of their falsity, that Bell intended that they be acted upon, and that plaintiff was induced to act upon them. Bell demurred to the reply upon the ground that these allegations did not constitute an avoidance of the

_____

[2] ORS 12.100(2) provides:

"An action upon a statute for penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state, excepting those actions mentioned in ORS 12.110, shall be commenced within three years."

[3] ORS 12.080 provides:

"(1) An action upon a contract or liability, express or implied, excepting those mentioned in ORS 12.070 and 12.110 and except as otherwise provided in ORS 72.7250;

"* * * * *

shall be commenced within six years."

[390]

statute of limitations defense but were instead an attempt to allege estoppel as an additional theory of recovery. As such, Bell argued, the estoppel should have been pleaded in the complaint. The trial court overruled the demurrer.

■ On appeal Bell has shifted its ground. In support of its demurrer Bell now argues only that the allegations in the reply were insufficient to raise an estoppel because the elements of estoppel were pleaded in conclusory terms and without sufficient particularity. Bell did not file a motion to make more definite and certain or otherwise raise this issue in the trial court. We do not, therefore, consider it here.

Bell also assigns as error what it calls the trial court's ruling that Bell was, in fact, estopped to rely on the statute of limitations. Although the jury found estoppel in answer to special interrogatories, Bell contends, citing ORS 16.460(2),[4] that because estoppel is an equitable defense the issue should have been decided by the court, that the jury's finding was therefore advisory only, and that we should review the evidence on this issue de novo as we are required to do in equity cases. ORS 19.125(3).[5]

■ Bell's position is not correct. Although the concept of estoppel is equitable in origin, it may be relied upon in an action at law without the interposition of a court

---

[4] ORS 16.460(2) provides, in part:

"In an action at law where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, he may set such matter up by answer, without the necessity of filing a complaint on the equity side of the court; and the plaintiff may, by reply, set up equitable matter, not inconsistent with the complaint and constituting a defense to new matter in the answer. * * * When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed, until the determination of the issues thus raised, as a suit in equity * * *."

[5] ORS 19.125(3) provides:

"Upon an appeal from a decree in a suit in equity, the cause shall be tried anew upon the record."

[391]

of equity. In *Sink v. Raptor,* 220 Or 601, 349 P2d 1104 (1960), the defendant relied upon an estoppel pleaded in the answer. Over defendant's objection that he was entitled to a jury trial on this issue, the trial court required him to proceed to trial before the court alone, sitting in equity. We reversed and remanded, saying:

> "It cannot be seriously contended that the defendant's answer did allege facts that 'required' the interposition of a court of equity as required by ORS 16.460. 'The estoppel claimed is an estoppel in pais, sometimes called an estoppel by conduct, or an equitable estoppel, which, of course, is as fully available in law as in equity. Bigelow on Estoppel (6 Ed.) p. 604.' *State v. Claypool,* (1934) 145 Or 615, 620, 28 P2d 882. *Comer v. World Insurance Co.,* (1957) 212 Or 105, 121, 318 P2d 916." 220 Or at 603.

It was, therefore, proper for the trial court to submit the issue to the jury if there was any evidence to support a finding of estoppel. In the trial court Bell did not object to submission of the issue on that ground, so there is no ruling on the sufficiency of the evidence before us for review. Because the jury found, with respect to each alleged overcharge, that Bell was estopped to rely on the statute of limitations, we need not consider the question of which statute would be applicable.

*Applicability of statutory provision for treble damages*

ORS 756.185 provides:

> "(1) Any public utility * * * which does, or causes or permits to be done, any matter, act or thing prohibited by ORS chapter 756, 757, 758, 760, 761, 763, 764, 767 or 773 or omits to do any act, matter or thing required to be done by such statutes, is liable to the person injured thereby in treble the amount of damages sustained in consequence of such violation together with a reasonable counsel's or attorney fees, to be fixed by the court in every case of recovery. Such attorney fees shall be taxed and collected as part of the costs in the case."

Pursuant to this statute, the trial court awarded plaintiff treble the amount of the overcharges which

the jury found it was entitled to recover, and included attorney fees in the judgment as part of the costs.

Bell contends that the statute does not apply in this case because none of the overcharges, or of Bell's actions upon which the claims were based, constituted the violation of any of the statutes listed in ORS 756.185(1). We will consider that contention later in this opinion in connection with our examination of each of the three categories of overcharge which is at issue. Bell also contends, however, that the statute does not apply in this case for two additional reasons.

It first argues that treble damages cannot be recovered because Bell's conduct was not shown to be "wilful, wanton, or malicious." In other words, Bell argues, something more than simple negligence must be shown. Plaintiff contends that the statute does not require such a showing. Certainly the statutory language itself requires only a showing that the public utility has violated a regulatory statute and that the violation has resulted in injury. Defendant argues, however, that the treble damage provision is clearly punitive and that a statute providing for a penalty should be construed as including a *mens rea* requirement unless it is very clear that the legislature intended that none be required.

In their briefs both parties discuss our cases involving the timber trespass statutes, but those cases are not particularly helpful with respect to the issue of statutory construction which is now before us. Those statutes by their own terms provide for treble damages for certain "wilful" acts, ORS 105.810, and for double damages for otherwise similar acts which are "casual or involuntary," or done with "probable cause" to believe they were not trespassory. ORS 105.815. In *Kinzua Lbr. Co. v. Daggett,* 203 Or 585, 281 P2d 221 (1955), we held that ORS 105.810, the double damage statute, did not provide for a penalty but merely for a form of liquidated compensatory damages which could, unlike a penalty, be awarded by a court of

equity. In *Ashcraft v. Saunders,* 251 Or 139, 444 P2d 924 (1968), we held that ORS 105.815, the triple damage statute, was penal in character and that liability thereunder could not be enforced against the estate of a deceased wrongdoer. *See also, Gordon Creek Tree Farms v. Layne,* 230 Or 204, 237, 358 P2d 1062, 368 P2d 737 (1962).

The issue now before us is not whether to characterize ORS 756.185(1) as penal or compensatory but whether, regardless of its proper characterization for other purposes, the legislature intended that it be applicable only when the violation was, in Bell's words, "wilful, wanton, or malicious." The legislature may, and frequently does, impose a penalty for violation of a regulatory statute even in the absence of a wrongful intent. *Kinzua Lbr. Co. v. Daggett, supra,* 203 Or at 593.

■ The statutory scheme taken as a whole suggests that if the legislature had intended such a *mens rea* requirement it would have expressly provided for it. The public utility statutes, which have been recently revised (1971 Or Laws ch 655), contain a number of provisions for civil and criminal penalties which are enforced by the state. In specific instances, those statutes provide a state of mind requirement while such a requirement is omitted from others.[6] We conclude from our examination of the overall statutory pattern that in the case of public utility regulation the

---

[6] Examples of statutes including such requirements are ORS 756.990(4) ($100 fine or 30 day imprisonment for violation of ORS 756.125—destruction of or interference with equipment owned or operated by commissioner—and $1,000 fine for a public utility that knowingly permits such a violation); ORS 757.330 (knowingly soliciting or receiving discriminatory rates punishable under ORS 757.990(5) by fine up to $1,000; compare ORS 757.325 prohibiting unjust discrimination by utility, punishable by fines up to $10,000 under ORS 757.990(4)); ORS 757.616 (wilful alteration of telegraph message); ORS 757.626 (unreasonable and wilful refusal to send telegraph message or to send in proper order, punishable under ORS 757.992 by fine or imprisonment; compare ORS 757.606 providing $100 penalty collectible from any telegraph company which sends a message out of its proper order).

legislature has recently considered the need for conditioning penalties upon a showing of a specific *mens rea,* and that we should not read such a requirement into a statute in which it is not expressed unless other considerations are persuasive that the legislature so intended in a particular case.

Several other states have, or have had, damage statutes similar to ORS 756.185(1) in their public utility acts. Apparently only one of those states, Wisconsin, has passed on the question now before us, and has reached a contrary result. Bell contends that the Wisconsin court's position should be highly persuasive in this case because that state's public utility laws were the pattern for our own. *Southern Pac. Co. v. Heltzel,* 201 Or 1, 30-31, 268 P2d 605 (1954). We are not certain that ORS 756.185(1) was in fact taken from the Wisconsin enactment, which appears to have been a later addition to the Wisconsin scheme upon which our early public utility statutes were based. This is of little consequence, however, as the similarity between the two statutes at least suggests a common source. The history of the statute's construction in that state does not, however, convince us that we should adopt the Wisconsin court's current position.

In 1913, two years after the enactment of the Wisconsin treble damage statute, that state's Supreme Court held that the statute would be construed to require "some element of willfulness, wantonness, or reckless disregard of duty." *Krom v. Antigo Gas Co.,* 154 Wis 528, 140 NW 41, 45 (1913). The court reasoned that in enacting the statute the legislature must have been aware of the court's prior cases interpreting statutes providing for a penalty as applicable only when some such showing was made. A rehearing was granted in that case, and the court adopted a changed rationale on another issue, a change which made it unnecessary for the court to reach the issue of the applicability of the treble damage statute. Nevertheless, the court deliberately took the occasion to say

that it believed its original opinion on that question was incorrect:

"* * * In many sections of the [public utility] law, notably the sections immediately preceding and the section immediately following [the treble damage provision], the Legislature has provided for the punishment of large numbers of acts and defaults and industriously differentiated between certain acts which are to be punished when committed willfully or knowingly and certain others as to which no requirement that they shall be knowingly or willfully committed appears. It is quite apparent, therefore, that the Legislature had the distinction in mind when the law was framed, and the idea that they intended only to cover willful or knowing acts or defaults by the provisions of [the treble damage section] seems entirely untenable." 143 NW 163, 164-65.

Nearly thirty years later the Wisconsin court reversed itself once again in *Chrome Plating Co. v. Wisconsin Elec. Power Co.,* 241 Wis 554, 6 NW2d 692 (1942). After examining the reasoning in both of the *Krom* opinions, the court concluded that the original opinion was better reasoned, and that the contrary conclusion upon rehearing should be disregarded as obiter dictum.

We are not persuaded to follow suit in construing our own statute. Whatever the Wisconsin legislature may have known in 1911 about that state's prior construction of statutes providing for similar penalties, there is no reason to believe that the Oregon legislature was so informed. Our treble damage statute was also enacted in 1911, prior to any published construction of the Wisconsin statute. 1911 Or Laws ch 279 § 67.

Our own cases which read a *mens rea* requirement into enhanced damage statutes, both before and after the enactment in question, are not controlling here. In *Springer v. Jenkins,* 47 Or 502, 84 P 479 (1906), we held that a statute providing for recovery of double damages from a person who had embezzled, aliened or

converted the property of a deceased person (B & C Comp § 1152) was evidently intended to punish wrong-doers and was only applicable to a defendant who was an "intermeddler, and acted from wrong motives or in bad faith." 47 Or at 508. In *Wilson v. Kruse,* 199 Or 1, 258 P2d 112 (1953), we held that the statute providing for a landlord's action for treble damages for waste (now, as amended, ORS 105.805) was applicable only when the waste was "wilfully, wantonly or maliciously committed." In both instances the statute under consideration was one which was obviously intended for enforcement against individuals who caused damage while acting in their private affairs. The considerations which we found convincing in those cases do not necessarily apply when we are construing a statute which, like ORS 756.185(1), is to be enforced only against a highly regulated enterprise like a public utility. The activities of public utilities are closely regulated in order to protect the interests of the public and the ratepayers, most of whom will have little understanding of the details of a utility's operations and rate structures. In such a setting, the legislature might well conclude that a deterrent purpose will be served by requiring a utility to pay enhanced damages for injuries caused by negligent as well as willful violations of the regulatory laws. As we explained above, the statutory pattern indicates that the legislature made some such judgment when enacting ORS 756.185(1), and did not intend its application to be limited to instances of wilful violations.

Bell also contends that in any event plaintiff cannot rely on the treble damage statute in this case because its application was not properly pleaded. Plaintiff alleged that the charges of which it complains were in excess of the defendant's public rate schedule or tariff and prayed for treble damages. Bell relies on *Springer v. Jenkins, supra,* where we said:

"If the rule governing actions under statutes giving aggravated damages is to be applied to this

section, the complaint does not state facts sufficient to entitle plaintiff to a recovery thereunder, because it does not recite the statute nor in any way allude to it. The general rule is that when aggravated damages are given by a statute, 'the demand for such damages must be expressly inserted in the declaration, which must either recite the statute or conclude to the damage of the plaintiff against the form of the statute.'" 47 Or at 507-508 (citations omitted).

In this case the complaint did not include any express reference to ORS 756.185(1) or direct use of its language.

■  The opinion in *Springer* does not say whether the issue of the applicability of the enhanced damage statute was raised in the trial court. In the present case, Bell's answer acknowledged that plaintiff was seeking treble damages as the record shows that Bell was aware at the beginning of the trial that those damages were being claimed under the statute. Bell has not shown that any objection on pleading grounds was made known to the trial court. Whether or not the rule as stated in *Springer* is correct under our system of fact pleading (see ORS 16.210), we will not apply it when the objection is made for the first time on appeal and the record clearly shows that the applicability of the statute was an issue throughout the trial. *See Spears v. Huddleston,* 265 Or 168, 175, 508 P2d 438 (1973); *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 219, 493 P2d 138 (1972). *Compare Troutman v. Erlandson,* 287 Or 187, 213, 598 P2d 1211 (1979).

■  We conclude, then, that the trial court did not err in awarding treble damages and attorney fees to the extent that any of Bell's conduct which is at issue in this case constituted a violation of the public utility statutes as enumerated in ORS 756.185(1). By various assignments of error, Bell has raised the question whether any of its conduct violated any applicable statute.

[398]

*Specific overcharges as violations of public utility statutes*

Plaintiff has argued that all of the overcharges constituted charges in excess of Bell's tariffs or published rate schedules in violation of ORS 757.225:

> "No public utility shall charge, demand, collect or receive a greater or less compensation for any service performed by it within the state, or for any service in connection therewith, than is specified in printed rate schedules as may at the time be in force, or demand, collect or receive any rate not specified in such schedule * * *."

There is a similar prohibition in ORS 757.310(1):

> "Except as provided in ORS 757.315 [not applicable here], no public utility or any agent or officer thereof shall, directly or indirectly, by any device, charge, demand, collect or receive from any person a greater or less compensation for any service rendered or to be rendered by it than:
>
> "(a) That prescribed in the public schedules or tariffs then in force or established; * * *."

A utility's rate schedules are further described in ORS 757.205:

> "(1) Every public utility shall file with the commissioner, within a time to be fixed by him, schedules which shall be open to public inspection, showing all rates, tolls and charges which it has established and which are in force at the time for any service performed by it within the state, * * *.
>
> "(2) Every public utility shall file with and as part of every such schedule all rules and regulations that in any manner affect the rates charged or to be charged for any service. Every public utility shall also file with the commissioner copies of interstate rate schedules and rules and regulations issued by it or to which it is a party."

Those portions of Bell's rate schedules which the parties considered relevant were placed in evidence. They consist of lists of types of equipment with, for each type, notations of the allowable charges for installation and monthly service. They do not

[399]

expressly prohibit any of the kinds of overcharges which are involved in this case. The parties have not cited any helpful authority interpreting our own or similar statutes, and we have found none.[7]

■ As to the charges collected in error for equipment that was not furnished at all, Bell freely admits that it must refund the charges because it was not entitled to collect them, but argues that they do not constitute charges in excess of the rate schedules. Its position is that it charged the proper rate for each item of equipment which was carried in its records on Holman's bill, and that nothing further need be shown to constitute compliance with the statutes. Plaintiff, of course, argues in effect that if a customer has been furnished with six items of equipment for which the scheduled rate is $3 a month, the effective overcharge is the same regardless of whether the telephone company errs by charging for eight items at the correct rate of $3, or by charging for six items at an excessive rate of $4. Although the question is a close one, we agree with plaintiff's position.

■ ■ The purpose of statutes like ORS 757.225 and 757.310 is not to make it illegal for a public utility to make an inadvertent billing error, but to protect the utility's customers from excessive or discriminatory charges. See, generally, 1 Priest, *Principles of Public Utility Regulation* 305 (1969). Nevertheless, because of the prophylactic and deterrent purposes of such statutes, it is not a defense to a complaint under such a statute that the utility acted in good faith and that its error was the result of simple negligence. *See National*

_____

[7] Because this case requires the construction of statutes the enforcement of which has been committed by the legislature to the Public Utility Commissioner, we raised at oral argument the question whether the issues of statutory construction should first have been submitted to the Commissioner. *See Zollinger v. Warner,* 286 Or 19, 593 P2d 1107 (1979). Bell's counsel informed us that Bell had considered invoking the doctrine of primary jurisdiction, or prior resort (the doctrine we applied in *Zollinger),* but had decided against doing so. Because the application of that doctrine does not involve the court's jurisdiction in the strict sense, we proceed to interpret the statutes, for purposes of this case, without the benefit of the Commissioner's views.

*Van Lines, Inc. v. United States,* 355 F2d 326, 331 (7th Cir 1966), interpreting in the context of an inadvertent overcharge 49 USC § 317(b), the equivalent provision of the Interstate Commerce Act.

■ The printed rate schedules prescribe the permissible charges for services rendered by the utility. In keeping with the statutory purpose to prevent any deviation from the published rates we conclude that ORS 757.225 must be read as prohibiting charges for service which has not been performed or for equipment which has not been furnished.

■ The overtrunking claim involves different considerations. The trunk lines involved were actually furnished by Bell and used by plaintiff. Plaintiff's evidence in support of this claim showed that on two occasions Bell personnel conducted two-day studies of the use of plaintiff's telephone system and concluded on each occasion that plaintiff had been furnished with one or two more trunk lines than were needed. It further showed that plaintiff's management relied on Bell personnel for advice about telephone needs and that Bell did not inform plaintiff about the results of the studies. In light of the jury's findings, we must assume that plaintiff's trunk lines were in fact underused and that plaintiff was unaware of this state of affairs. There is, however, no basis for concluding that the plaintiff received no benefit at all from the line or lines which the jury found to be unnecessary. The situation, then, is quite different from that involving a charge for service which was never provided. The underlying problem here is not one of overcharging but of overselling. Undoubtedly the legislature may, if it believes there is a need to control such activity by public utilities, enact appropriate legislation to deal with it. We find no grounds for believing, however, that the legislature intended to do so by statutes requiring adherence to published rates. If Bell violated any duty to plaintiff by failing to disclose that plaintiff's needs could be served with fewer trunk lines,

[401]

that violation has no relation to either the language of ORS 757.225 or the evils at which it was directed.

■ Similarly, we conclude that the lost trunk claim does not involve a violation of that statute. Considering the evidence in the light most favorable to plaintiff, it could be argued that because plaintiff never knew about that trunk line and because it was useless unless its presence was known, the charge for that line is the equivalent of a charge for a line that was never installed at all. We cannot, however, accept that argument for purposes of the applicability of ORS 757.225. Although it encompasses negligent overcharges of certain kinds, the statute was designed to prevent deliberate rate practices and not to deter negligence on the part of installation crews. The language of the statute does not apply, and its purpose does not require its application, to this situation.

As to the overtrunking claim, plaintiff also contends that Bell's conduct violated ORS 757.310(1), which provides:

"Except as provided in ORS 757.315 [not applicable here], no public utility * * * shall, directly or indirectly, by any device, charge, demand, collect or receive from any person a greater or less compensation for any service rendered or to be rendered by it than:
"* * * * *
"(b) It charges, demands, collects or receives from any other person for a like and contemporaneous service under substantially similar circumstances."

Plaintiff argues that the jury could conclude that plaintiff was furnished with and charged for more equipment than were other customers with substantially similar telephone service needs, and that to the extent that plaintiff thus paid more for the level of service actually used Bell collected from plaintiff greater compensation than it received from other customers "for a like and contemporaneous service

under substantially similar circumstances" in violation of the statute. We hold that plaintiff's argument is not well taken.

■ The primary purpose of the statutory prohibition is not to prevent the overselling of telephone services, but rather to prevent the utility from giving some customers preferential rates. Subsection (2) provides that a utility which violates this section is guilty of "unjust discrimination." The statutory term "service" is defined by ORS 756.010(11) as follows:

> " 'Service' is used in its broadest and most inclusive sense and includes equipment and facilities related to providing the service or the product served."

When ORS 757.310(1)(b) is read in light of this definition, it does not prohibit the provision of unnecessary equipment but only the charging of different rates for service, including equipment, which is provided. It would not be consistent with the legislative intent to read the statute as plaintiff would have us do, and that reading would require distinctions which are not found in the statutes themselves.

■ Disclosure or nondisclosure to the customer is not relevant to a charge of unjust discrimination in rates; the evil at which the statute is directed is not deceit but the discriminatory rate practices themselves. *See, generally,* Priest, *Principles of Public Utility Regulation* ch 7, 285-326 (1969). Where the determination of a customer's equipment needs is concerned, however, plaintiff has contended that disclosure is the essence of the telephone company's obligation. It could not be argued that the telephone company had engaged in "unjust discrimination" if it accommodated the request of a fully-informed customer who wanted, for whatever reason, more equipment than the telephone company's experts believed was required to serve that customer's needs. The statute, however, contains no language permitting the kind of selective application

of a disclosure test which would be required if plaintiff's position were adopted. We conclude that ORS 757.310(1)(b) does not prohibit the kind of overselling of which plaintiff has complained in this case.

■ In summary, then, as to plaintiff's treble damage claim we hold that Bell's charges for equipment which was never installed constituted a violation of ORS 757.225, but that no statute upon which plaintiff relies was violated by the facts underlying plaintiff's overtrunking and lost trunk claims.

*Submission of overtrunking and lost trunk claims to the jury*

■ In addition to its objections to the treble damage award, Bell has attempted to argue on appeal that in any event the evidence did not support the submission to the jury of plaintiff's claims based on overtrunking and the lost trunk. We do not consider that argument because the sufficiency of the evidence was not challenged at trial. With respect to these two items, the contentions which Bell did make in the trial court and which are preserved by its assignments of error and argument in this court have to do with the form of the jury instructions.

■ As an affirmative defense, Bell relied upon a rule promulgated by the Public Utility Commissioner, providing:

"(1) Every customer * * * who for any reason wishes to have such service discontinued, shall give three (3) days notice in advance of specified date of discontinuance of service to the utility. Until the utility shall have such notice, the customer shall be responsible for all service rendered." OAR 860-23-050.

The rule was later amended to require five days' notice, and was renumbered as OAR 860-21-065. Each version of the rule was in force during a portion of the time period involved in this case. The trial court

instructed the jury that an "overcharge," for purposes of this case, is

> "* * * a charge collected above the lawful tariff or a charge collected for service not provided to or needed by the customer."

The trial court also instructed the jury that

> "* * * the plaintiff did have a duty to order discontinuance of a service if it did not wish to pay for that service, and a failure to order the stopping of the service makes the plaintiff liable for proper tariff charges.
>
> "This rule, however, does not apply to any service of which the plaintiff was unaware or any service which was the result of any overtrunking, as I have discussed overtrunking with you."

Bell excepted to both of these instructions on the ground that they did not give proper effect to its affirmative defense of lack of notice to discontinue service.

If we assume, as we must, that there was evidence from which the jury could find that, because of Bell's concealment or negligence, plaintiff was not informed of the presence of the lost trunk or of the fact that Bell had provided it with more trunk lines than were necessary to handle its telephone needs, then Bell's exceptions to the instructions were not well taken. The only reasonable interpretation of the Commissioner's rule is to hold that it does not apply to service of which the customer is unaware as a result of the telephone company's fault. Under the circumstances, then, the trial court's instructions were not erroneous.[8]

*Prejudgment interest*

■ Finally, Bell contends that the trial court erred in awarding prejudgment interest because plaintiff's

---

[8] With respect to the lost trunk and overtrunking claims, we want to emphasize that we are not holding that the underlying facts in either instance give rise to a right of recovery. We have not considered those issues because they are not properly raised by Bell on appeal. We hold only that assuming there is a right of recovery it is not defeated by failure to comply with the Commissioner's notice rule when that rule is properly construed.

pleading foundation was inadequate. We hold that there was no error.

Although plaintiff prayed for interest in its complaint, Bell contends that this is not enough and that facts supporting the plaintiff's right to recover prejudgment interest must be alleged. The parties disagree as to whether under our cases the prayer for prejudgment interest is sufficient, or whether an additional pleading foundation is necessary.

In *Shepherd v. Hub Lumber Co.,* 273 Or 331, 349-50, 541 P2d 439 (1975), we deleted from a judgment an award of prejudgment interest because the complaint "did not plead facts to establish a claim for interest prior to the entry of judgment and the prayer of the complaint did not ask for an allowance of interest, as required by our previous decisions." We did not specify in what way the factual allegations of the complaint were insufficient. Like our earlier decisions denying prejudgment interest for lack of a proper pleading foundation, the result in *Shepherd* is justified by the absence of a demand for interest in the prayer. *Lithia Lumber Co. v. Lamb,* 250 Or 444, 447, 443 P2d 647 (1968), and cases there cited; *Arley v. Chaney/Nelson,* 262 Or 69, 82, 496 P2d 202 (1972). To the same effect is the more recent decision in *Gardner v. Meiling,* 280 Or 665, 676, 572 P2d 1012 (1977).

If factual allegations are required, plaintiff's amended complaint is sufficient. It includes an itemized list of the amounts of the claimed overcharges, the equipment involved in each claim, and the inclusive dates of the period during which each alleged overcharge was made. It thus alleges the exact amount claimed to be due and the dates during which plaintiff claimed it was deprived of the use of its money.[9] It was not necessary to repeat those allegations in support of the prayer for prejudgment inter-

---

[9] Interest is payable at the legal rate on "[a]ll moneys after they become due." ORS 82.010(1)(a). *See City of Portland v. Hoffman Construction Company,* 286 Or 789, 805-806, 596 P2d 1305 (1979).

[406]

est. Bell has not suggested what additional factual allegations should be required.

*Conclusions*

■ The only error which we have found in this case is the trial court's conclusion that the lost trunk and overtrunking claims, upon which the jury found in plaintiff's favor, constituted violations of the public utility statutes. Because we hold that these claims did not involve the violation of the relevant statutes, the judgment should be reduced by the amount which reflects treble damages rather than actual damage for these items. Moreover, because the only basis for the trial court's award of attorney fees in this case is ORS 756.185(1) which provides for the recovery of attorney fees as a part of costs by an injured party who recovers treble damages for a violation of the statutes, the case must be remanded to the trial court for determination of the amount of a reasonable attorney fee attributable to that portion of the case involving charges which violated ORS 757.225. In all other respects the judgment of the trial court is affirmed.

Affirmed in part; reversed in part, and remanded for further consideration and modification.