# CHASE GARDENS, INC.,
a corporation,
*Appellant,*

*v.*

# OREGON PUBLIC UTILITY COMMISSION;
Ron Eachus, Joan H. Smith
and Roger Hamilton,
*Respondents,*

*and*

# NORTHWEST NATURAL GAS COMPANY,
*Intervenor - Respondent.*

(93C12957; CA A82971)

886 P2d 1087

Robert H. Fraser argued the cause for appellant. With him on the briefs was Luvaas, Cobb, Richards & Fraser, P.C.

Jas. Adams, Assistant Attorney General, argued the cause for respondents. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Lawrence H. Reichman argued the cause for intervenor - respondent. With him on the brief were Michael H. Simon and Perkins Coie.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff appeals from a judgment of the circuit court affirming an order of the Public Utility Commission (PUC), which declared that actions of intervenor Northwest Natural Gas Company (NNG) did not constitute unjust discrimination in violation of ORS 757.310[1] or ORS 757.325.[2] We affirm.

Plaintiff grew roses for sale to florists and used natural gas to heat its greenhouses. On December 10, 1990, NNG sent plaintiff a bill for $52,563, which became delinquent December 26. On December 27, NNG told plaintiff that it would terminate gas service unless plaintiff paid the bill in full. NNG filed crop liens on plaintiff's roses on December 31. On January 7, 1991, the parties met to discuss payment and billing matters, including the amount of plaintiff's bill for the December services and charges. The parties did not agree on a payment plan. Two days later, NNG informed plaintiff in writing that it would not terminate service if plaintiff paid it $60,000 by January 15. NNG also told plaintiff that it would release the crop lien if plaintiff paid $100,000 by that date. On January 11, 1991, NNG sent plaintiff a bill for $148,895, reflecting services rendered as of December 31, 1990. Plaintiff could not pay that bill, in part, because it lost its credit line as a result of the crop liens. Later, plaintiff permanently closed its business.

---

[1] ORS 757.310 provides, in part:

"(1) Except as provided in ORS 757.315, no public utility or any agent or officer thereof shall, directly or indirectly, by any device, charge, demand, collect or receive from any person a greater or less compensation for any service rendered or to be rendered by it than:

"(a) That prescribed in the public schedules or tariffs then in force or established; or

"(b) It charges, demands, collects or receives from any other person for a like and contemporaneous service under substantially similar circumstances. * * *

"(c) Any utility violating this section is guilty of unjust discrimination."

[2] ORS 757.325 provides:

"(1) No public utility shall make or give undue or unreasonable preference or advantage to any particular person or locality, or shall subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect.

"(2) Any public utility violating this section is guilty of unjust discrimination."

NNG filed an action seeking to attach plaintiff's assets. Plaintiff asserted a counterclaim alleging "unjust discrimination as set forth in ORS 757.310 and 757.325." The circuit court stayed the action, so that NNG could petition PUC for a declaratory ruling to determine whether NNG's conduct violated those statutes. PUC issued an opinion, based on the facts alleged in plaintiff's counterclaim and on supplemental facts provided by NNG, which held that NNG did not violate either ORS 757.310 or ORS 757.325. Plaintiff appeals from a judgment of the circuit court that upheld that order.

Although this is an appeal from a judgment of the circuit court, we review PUC's order. ORS 756.598; *Pacific Northwest Bell Telephone Co. v. Katz*, 116 Or App 302, 305, 841 P2d 652 (1992), *rev den* 316 Or 527 (1993). There are several applicable standards of review. *Citizens' Utility Board v. Public Utility Commission*, 128 Or App 650, 655, 877 P2d 116, *rev den* 320 Or 272 (1994). The party seeking to reverse PUC has the burden to show, by "clear and satisfactory evidence," that the order is "unreasonable or unlawful." ORS 756.594. Whether or not we agree with PUC's inferences or reasoning, we will uphold the order if it discloses a rational relationship between the facts and the legal conclusion reached. *Pacific Northwest Bell Telephone Co. v. Katz, supra*, 116 Or App at 305. To the extent that PUC's determinations involve the exercise of discretion that has been delegated to it, we review to determine whether PUC's decision is within the range of discretion allowed by the more general policies of the statutes. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 219, 621 P2d 547 (1980); *Citizens' Utility Board v. Public Utility Commission, supra*, 128 Or App at 655.

Plaintiff's first assignment is that PUC erred in declaring that, under ORS 757.310, NNG did not unjustly discriminate against plaintiff.[3] In its opinion, PUC said:

"NNG demanded more from [plaintiff] than was delinquent according to the December 10, 1990, bill. On January

---

[3] Plaintiff's first assignment also asserts that PUC erred in declaring that NNG's actions did not constitute unjust discrimination under ORS 757.325. Because plaintiff makes no argument about that statute in the first assignment, we will not discuss it. *See Loewen v. Galligan*, 130 Or App 222, 882 P2d 104 (1994).

9, 1991, the overdue amount that [plaintiff] owed was $52,562. NNG proposed a payment plan under which [plaintiff] would pay either $60,000 (to avoid termination of service) or $100,000 (to have the crop lien released). However, the Commission concludes that NNG's demand was not a request for a deposit. The January 9, 1991, letter is a demand for part payment for services already consumed. The parties met on January 7, 1991, and discussed the amounts that [plaintiff] would owe for December 1990 consumption. The January 11, 1991 bill to [plaintiff] showed a total due of $148,894. That amount reflects [plaintiff's] usage through December 31, 1990. NNG's demand for $60,000 or $100,000 on January 9, 1991, is a demand for payment for services already rendered. NNG demanded payment two days before its bill had issued, but that is a collection issue, not an issue covered by ORS 757.310.

"* * * * *

"Under the assumed facts, NNG did not directly or indirectly charge, demand, collect or receive from [plaintiff] a greater or less compensation for any service rendered than that prescribed in its tariffs or than it charged other customers in substantially similar circumstances. NNG did not violate ORS 757.310."

Plaintiff raises several arguments about ORS 757.310. However, those arguments are predicated on its assertion that NNG violated applicable tariffs by demanding, in its January 9, 1991, letter, more from plaintiff *than was delinquent.* Plaintiff characterizes that demand as an unlawful request by NNG for a deposit.

At the time, the applicable tariff provided, in part:

"Regular monthly gas bills *are due when rendered* and become delinquent upon expiration of the date printed on the bill." (Emphasis supplied.)

The plain language of ORS 757.310 provides, in part, that a public utility is guilty of unjust discrimination if it directly or indirectly collects or receives greater or lesser compensation *for any service rendered* by it than that prescribed in the public tariffs.[4] PUC concluded that the January 9, 1991, letter was a demand for part payment for services *already*

---

[4] Plaintiff does not assert that NNG billed other customers differently for like and contemporaneous services under substantially similar circumstances.

*consumed. See Holman Transfer Co. v. PNB Telephone Co.,*
287 Or 387, 401-03, 599 P2d 1115 (1979). There is no claim
that NNG demanded greater compensation from plaintiff
than from any other customer or charged plaintiff for services
that had not yet been rendered to plaintiff.

PUC applied the tariff and the language of ORS
757.310 to the facts, and concluded that NNG did not violate
that statute. There is a rational relationship between the
facts and the legal conclusion that PUC reached. Plaintiff's
remaining arguments about ORS 757.310 do not require
discussion.

Plaintiff also makes various arguments about pre-
sumptions and the burden of persuasion under the Oregon
Evidence Code. Those arguments are predicated on its asser-
tion that the assumed facts establish "a *prima facie* case of
discriminatory disadvantage under both ORS 757.310 and
ORS 757.325 * * *." In addressing those arguments below,
PUC said, in part:

> "[B]y invoking the presumptions * * * [plaintiff] assumes
> that NNG did not obey the law and did not transact fairly and
> reasonably with [plaintiff]. The assumed facts do not support
> that interpretation."

There is a rational relationship between the facts and the
legal conclusion that PUC reached.

■      Plaintiff's next assignment is that PUC erred in
concluding that, under ORS 757.325, NNG did not unjustly
discriminate against plaintiff.[5] Plaintiff argues that PUC
incorrectly interpreted that statute. NNG contends that PUC
properly construed delegative terms in the statute when it
concluded that NNG did not violate ORS 757.325. We agree
with NNG.

■      The legislature has granted PUC broad power to do
"all things necessary" to supervise and regulate public util-
ities. ORS 756.040. *See also Pacific Northwest Bell Telephone
Co. v. Katz, supra,* 116 Or App at 309. One power the
legislature delegated to PUC is the responsibility for deter-
mining the circumstances under which a public utility

---

[5] In its second assignment, plaintiff also recapitulates its arguments about
757.310. We need not address those arguments a second time.

unjustly discriminates against a particular customer. In deciding whether unjust discrimination has occurred under ORS 757.325, PUC must apply the terms "undue or unreasonable preference or advantage," or "undue or unreasonable prejudice or disadvantage," to a particular set of facts. We conclude that those terms are delegative, because PUC's task in administering ORS 757.325 "is to complete the general policy decision [of prohibiting a public utility from unjustly discriminating against a particular customer] by specifically applying it * * * to various fact situations." *Springfield Education Assn. v. School Dist., supra,* 290 Or at 229.

The Supreme Court, in discussing judicial review of agency interpretation of delegative terms, said:

> "The discretionary function of the agency is to make [a policy] choice and the review function of the court is to see that the agency's decision is within the range of discretion allowed by the more general policy of the statute." 290 Or at 229.

Here, the order provided, in part:

> "[Plaintiff] asserts that NNG violated ORS 757.325 by seven acts. * * *

> "[Plaintiff's] seven factual situations amount to one issue: Did NNG violate ORS 757.325 by filing the crop lien, whether by its motive or by its pursuit of collection remedies?

> "ORS 757.325, like ORS 757.310, prohibits unjust discrimination. ORS 757.310 prohibits unjust discrimination in rates among customers. ORS 757.325 prohibits, among other things, subjecting a particular person or locality to undue or unreasonable prejudice or disadvantage in any respect. 'Prejudice' and 'disadvantage' are not defined in the statute. The provision has been taken to prohibit unreasonable differences in area rates. *American Can Co. v. Davis,* 28 Or App [207, 559 P2d 898] (1977). Other jurisdictions, interpreting substantially similar statutes, conclude that their main purpose is to eliminate discrimination in service or rates * * * in order to ensure quality of treatment among all customers * * *. Implicit in all these interpretations is a term of comparison. A particular person or locality must be treated differently from other, similarly situated persons or localities in order to establish violation of the statute. To constitute a violation, the disparate treatment must also, of course, be undue or unreasonable.

"[Plaintiff] certainly suffered disadvantage from the lien. It lost its line of credit, was unable to meet its financial obligations, and was forced to go out of business. However, the assumed facts do not show that [plaintiff] was subjected to disparate treatment by virtue of NNG's filing the lien. The facts show nothing about NNG's treatment of other, similarly situated customers. The Commission concludes that the assumed facts are insufficient to support a finding that NNG subjected [plaintiff] to disparate treatment.

"* * * * *

"The assumed facts do not show that NNG violated ORS 757.325."

PUC articulated the reasons why it concluded that a condition precedent to establishing a violation of ORS 757.325 is that a particular person or locality must be treated differently from other, similarly situated persons or localities. We conclude that the order reflects "a choice of policy which is essentially legislative in that it refines a general legislative policy," *Springfield Education Assn. v. School Dist., supra,* 290 Or at 229, and is within the range of discretion allowed by the more general policy of ORS chapter 756 and ORS chapter 757.

Plaintiff's final assignment is that PUC erred in allowing NNG to add supplemental "background" facts to the record, because the parties had agreed to present the case to PUC based on the facts alleged in plaintiff's counterclaim. Although plaintiff strenuously argues that it was prejudiced by the inclusion of the supplemental facts, it has failed to identify *any* of the supplemental facts that affected PUC's decision.[6] *See Te-Ta-Ma Truth Foundation v. Vaughan,* 114 Or App 448, 452, 835 P2d 938 (1992).

Affirmed.

---

[6] In fact, plaintiff does not identify any of the supplemental facts provided by NNG.