Argued and submitted March 8, OAR 860-027-0070 held valid August 4, petition for review denied November 2, 1999 (329 Or 479)

# BEAVER CREEK COOPERATIVE TELEPHONE COMPANY
## and Stayton Cooperative Telephone Company,
### *Petitioners,*

*v.*

## PUBLIC UTILITY COMMISSION,
### *Respondent.*

## (98-060; CA A102878)

986 P2d 592

Richard A. Finnigan argued the cause and filed the brief for petitioners.

Jas. Adams argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

Petitioners[1] seek judicial review of an amendment to OAR 860-027-0070 promulgated by the Public Utility Commission of the State of Oregon (PUC). The amended rule compels telecommunications cooperatives providing "through services[2] to submit annual reports to PUC covering all services they provide. For the following reasons, we uphold the validity of the rule.

In 1997, PUC initiated rulemaking proceedings to require annual financial and operational reporting for all intrastate telecommunications services provided by cooperatives, because it was concerned with access rates charged by cooperatives for providing toll/access through service—*i.e.*, long distance service. Access rates are not paid by cooperative members but, rather, are paid by the long distance carriers who use cooperatives' facilities to complete calls. PUC was also concerned with proliferating Extended Area Services (EAS)[3] because, among other things, cooperatives are not permitted to recover the costs of EAS from access rates. PUC reasoned that annual reporting covering all services was necessary to verify the reasonableness, based on the costs of providing toll/access through service, of access rates charged by cooperatives. Therefore, PUC amended OAR 860-027-0070[4]

---

[1] Petitioners are cooperatives that provide telecommunications service in Oregon.

[2] Through service" is defined as "intrastate telecommunications service * * * which involves the facilities, equipment, or services of two *or more telecommunications utilities and/or cooperatives.* Examples of 'through services' may include, but are not limited to, intrastate toll/access service, extended area service, and E 9-1-1 service." OAR 860-022-0003; OAR 860-034-0295. (Emphasis in original.) Petitioners do not challenge the validity of that definition in this proceeding.

[3] EAS is a substitute for toll/access long distance service. EAS is a discounted or flat-rated service arrangement between neighboring telecommunications service providers. Under EAS arrangements, the neighboring service providers do not charge each other for toll or access services.

[4] OAR 860-027-0070 provides, in part:

"(2) Annual Reports will be submitted by telecommunications utilities, *unincorporated associations and cooperative corporations.* The report Form O for the previous calendar year shall be submitted on or before April 1, using the most current forms approved by the Commission. The intrastate report Form I for the previous calendar year shall be submitted on or before October 31 using the most current forms approved by the Commission." (Amended language emphasized.)

to include cooperatives within the rule's mandatory reporting requirements. For statutory rulemaking authority, PUC relied on ORS 759.220(2),[5] which authorizes PUC to establish the "terms and conditions" of through service.

In a single assignment of error, petitioners challenge the validity of OAR 860-027-0070 on three primary grounds. First, petitioners assert that ORS 759.220(2) does not authorize PUC to promulgate rules establishing the terms and conditions of through service. Second, petitioners contend that, even if PUC has such rulemaking authority, the legislature did not intend to obligate cooperatives to make annual financial reports as a term or condition of through service. Finally, petitioners argue that any authority PUC has to compel financial reports is limited exclusively to information pertaining to through service.

Before addressing the merits of petitioners' arguments, we observe that the legislative policy underlying telecommunications regulation is to "secure and maintain high-quality universal telecommunications service at just and reasonable rates for all classes of customers * * *." ORS 759.015. In order to implement that policy, the legislature has delegated power to PUC to "supervise and regulate" every telecommunications utility in the state. ORS 756.040(2). That delegation notwithstanding, the legislature has excluded telecommunications cooperatives from PUC's general regulatory authority because cooperatives provide services to their members rather than to the general public. ORS 759.005(1)(b)(B); *see generally* ORS chapter 62.

Although PUC lacks full regulatory authority over cooperatives, several statutes subject cooperatives to PUC's authority for specific purposes. *See, e.g.,* ORS 759.025(2)

---

Form O requires disclosure of general financial data. Form I requires disclosure of operations data.

[5] ORS 759.220 provides, in part:

"(2) The Public Utility Commission may, and shall, whenever deemed by the commission to be necessary or desirable in the public interest, after full hearing upon complaint, or upon the commission's own initiative without complaint, establish through service, classifications and joint rates, the divisions of such rates *and the terms and conditions under which such through service shall be rendered.*" (Emphasis added.)

(authorizing PUC to issue certificates of authority to cooperatives) and ORS 759.500 to ORS 759.570 (authorizing PUC to allocate cooperatives' territory and customers). Most relevant to this case, ORS 759.225 provides that "[n]otwithstanding any other provision of law, ORS 759.220 applies to any unincorporated association or cooperative corporation providing intrastate telecommunications service," thereby treating cooperatives as telecommunication utilities subject to PUC authority for purposes of regulating the terms and conditions of through service. With the foregoing statutory framework in mind, we turn to petitioners' first argument.

■       Petitioners acknowledge that cooperatives are subject to the provisions of ORS 759.220 but nonetheless argue that the statute does not authorize PUC to promulgate rules. As a creature of statute, PUC derives authority from its enabling legislation and from general administrative laws. *City of Klamath Falls v. Environ. Quality Comm.*, 318 Or 532, 545, 870 P2d 825 (1994); *Lee v. Oregon Racing Commission*, 142 Or App 114, 117, 920 Or 554, *rev den* 324 Or 394 (1996). The legislature has authorized PUC to "adopt and amend reasonable and proper rules and regulations relative to all statutes it administers." ORS 756.060. Despite that broad grant of rulemaking authority, petitioners contend that PUC has limited administrative responsibilities under ORS 759.220 that do not include rulemaking. Petitioners assert that the text of the statute shows that the legislature merely intended to authorize PUC to resolve disputes among telecommunications utilities and cooperatives providing through service. Because petitioners raise a question of statutory construction, we review the text and context of ORS 759.220 and, if necessary, its legislative history. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

■       ORS 759.220(2) provides that, "after full hearing upon complaint, or upon the commission's own initiative without complaint * * *," PUC may establish through service and the terms and conditions of through service. The authority granted to PUC is consistent with both modes of authority typically conferred on administrative agencies: the resolution of individualized disputes through contested case proceedings, ORS 183.413 to ORS 183.470, and the adoption of rules

of broader prospective application through rulemaking proceedings, ORS 183.325 to ORS 183.410. The statute expressly authorizes PUC to establish terms and conditions without the need for a complaint submitting a specific dispute for its determination. Because administrative agencies may act on their own initiative in rulemaking, ORS 183.335(3)(a), and because there is nothing in the text or context of the statute that suggests that the legislature intended otherwise, we construe ORS 759.220 to authorize PUC to promulgate rules regarding the terms and conditions of through service.

■      Petitioners next assert that financial reporting is not a permissible "term" or "condition" of through service and, therefore, the amended rule exceeds PUC's statutory authority. Petitioners contend that OAR 860-027-0070 falls outside the authorized range of PUC's discretion because rate information is relevant only when PUC seeks to regulate "joint rates," which the parties agree are common rates charged by two or more telcommunications utilities for a single service, the revenues of which are pooled and divided among the participants.[6] Petitioners identify EAS service as an example of through service that does not involve joint rates. Petitioners explain that cooperatives bill EAS charges to their own customers without compensation from other participating carriers. Thus, petitioners assert that no "joint rate" applies and rate information is not relevant to the terms and conditions of through service. PUC counters that the rule is within its discretion, because rate information is needed to ensure, for example, that the costs of EAS are not included in access charges that are paid by long distance providers and therefore affect the public generally.

As we stated earlier, for purposes of ORS 759.220, the legislature has deemed cooperatives to be telecommunications utilities. ORS 759.225. Therefore, cooperatives are subject to PUC's general powers and duties to regulate telecommunications utilities for purposes of establishing the terms or conditions of through service. One such power is the

---

[6] The term "joint rate," as used in ORS 759.220, is not defined by statute or rule. We express no opinion as to whether the definition proposed by the parties would follow from a construction of the term under *PGE.* Such an analysis is not necessary in this case, because whatever the legislature meant by "joint rate" does not affect the result of petitioner's appeal.

authority to protect the public generally "from unjust and unreasonable exactions and practices and to obtain for them adequate service at fair and reasonable rates." ORS 756.040(1).

■     The challenged rule is intended to address a legitimate concern within the scope of PUC's authority, namely, the reasonableness of access charges paid by long distance service providers for through service that are ultimately passed on to the general public. In the course of establishing the terms and conditions of through service, PUC is entitled to fulfill its authority to verify that access charges made by cooperatives to other service providers are fair and reasonable. *Chase Gardens, Inc. v. Public Utility Commission*, 131 Or App 602, 607-08, 886 P2d 1087 (1994) (the court reviews PUC's construction of its delegated statutory authority in accordance with the general legislative policy underlying that authority, including general powers under ORS 756.040). Therefore, we conclude that the annual financial and operational reporting requirements imposed on telecommunications cooperatives providing through service is within the range of discretion delegated to PUC based on the policies underlying ORS 759.220(2) and ORS 756.040(1).

■     Finally, petitioners argue that, at most, PUC needs financial information about the costs of through service in order to verify the reasonableness of the cooperatives' charges. Petitioners contend that the amended rule exceeds the scope of PUC's authority by requiring the disclosure of financial information covering all services provided by cooperatives. Again, we disagree. The rule permits PUC to meaningfully assess whether through service access charges are reasonable and do not subsidize other services provided by cooperatives.

For the foregoing reasons, we conclude that PUC is authorized to require the disclosure of financial and operational information covering all of the petitioners' services because that disclosure reasonably relates to its authority to prevent unreasonable exaction and practices by telecommunications utilities and to establish the terms and conditions of through service.

OAR 860-027-0070 held valid.