Argued and submitted July 22; resubmitted in banc December 2, 1981, affirmed February 2, reconsideration denied April 8, petition for review allowed May 11, 1982 (293 Or 146) See later issue Oregon Reports

The BEN RYBKE COMPANY,
*Appellant,*

*v.*

The ROYAL GLOBE INSURANCE
COMPANY et al,
*Respondents.*

(No. A7806 09194, CA 18688)

640 P2d 620

Janice M. Stewart, Portland, argued the cause for appellant. With her on the briefs was McEwen, Newman, Hanna & Gisvold, Portland.

Randall B. Kester, Portland, argued the cause for respondent The Royal Globe Insurance Company. With him on the brief was Cosgrave, Kester, Gidley & Lagesen, Portland.

Deborah S. MacMillan, Portland, argued the cause for respodnent The St. Paul Fire and Marine Insurance Company. With her on the brief were Douglas G. Houser, I. Franklin Hunsaker, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

JOSEPH, C. J.

Richardson, J., dissenting.

### JOSEPH, C. J.

This is an appeal by an insured party from judgments in favor of its insurers, Royal Globe Insurance Company (Royal Globe) and St. Paul Fire and Marine Insurance Company (St. Paul), in an action to recover insurance proceeds for insured fire losses. Defendants asserted that plaintiff's action is barred by the one-year limitation period in the defendants' policies and ORS 743.660.[1] Plaintiff asserted an estoppel against the insurers' reliance on the limitation. The trial court found for the insurers on both issues. We affirm.

On February 7, 1977, plaintiff's place of business was damaged by fire. Immediately after the fire and on demand by the plaintiff, St. Paul made a $7,500 "advance payment" to plaintiff; Royal Globe made an "advance payment" of the same amount in March, 1977. Extensive correspondence and deliberations among adjusters, agents and attorneys for the parties took place concerning the amounts of defendants' liabilities. In its proofs of loss filed with the insurers in June and July, 1977,[2] plaintiff claimed from each insurer one-half of $112,182 for stock and inventory loss, $13,580 for equipment loss, and $44,000 for "business interruption." The insurers contended that recovery for the inventory and equipment losses was limited under the policies' terms to the amounts reflected in the most recent monthly report filed by plaintiff and, therefore, could not exceed the $44,850 amount shown on plaintiff's December, 1976, report. Plaintiff disagreed. The attorneys for the parties considered the possibility of a proceeding under ORS chapter 27 to resolve the controversy

---

[1] ORS 743.660 provides:

"A fire insurance policy shall contain a provision as follows: 'No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.'"

[2] Plaintiff's basic claims, although not the exact dollar amounts shown on the proofs of loss, had been communicated to the insurers' representatives at an earlier time, and the disagreements over the amount of liability were well advanced before the proofs of loss were filed.

over the limit on compensation for the inventory and equipment losses. Also, the insurers considered the claim for business interruption to be excessive. St. Paul clearly demanded an appraisal. ORS 743.648. The parties disagree about whether Royal Globe also demanded an appraisal and whether St. Paul's demand pertained only to the business interruption claim or to all claims. On September 7, 1977, and December 13, 1977, respectively, St. Paul and Royal Globe, again at the request of plaintiff, transmitted payments of $30,540.68 to plaintiff's attorney, and both insurers then asserted that those payments, together with their earlier advances, constituted full payment of all sums owed plaintiff for its losses.

Plaintiff filed this action on the insurance contract on June 5, 1978 — more than one year after the fire.[3] St. Paul and Royal Globe interposed the limitation period as an affirmative defense. Plaintiff argued that the running of the limitation period was suspended under ORS 12.155[4] by the insurers' tender of the advance payments and also that the insurers were estopped by their conduct to assert the limitation. Plaintiff assigns error to the trial court's rejection of both contentions.[5]

---

[3] Deliberations and correspondence among the attorneys also continued until the month before the action was brought.

[4] ORS 12.155 provides:

"(1) If the person who makes an advance payment referred to in ORS 41.960 or 41.970 gives to each person entitled to recover damages for the death, injury or destruction, not later than 30 days after the date the first of such advance payments was made, written notice of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations, then the making of any such advance payment does not suspend the running of such period of limitation. The notice required by this subsection shall be in such form as the Insurance Commissioner prescribes.

"(2) If the notice required by subsection (1) of this section is not given, the time between the date the first advance payment was made and the date a notice is actually given of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations is not part of the period limited for commencement of the action by the statute of limitations."

[5] Plaintiff's ORS 12.155 contention was rejected by the trial court in a partial summary judgment proceeding. The estoppel defense was rejected after an evidentiary hearing. The trial court found that the evidence of estoppel was in equipoise and therefore decided the issue adversely to plaintiff, the party having the burden of proof on the issue.

■    Defendants do not contend that they notified plaintiff "of the date of expiration of the period of limitation" at any time which would have permitted that period to expire under ORS 12.155(2) before the action was brought. They do contend that the limitation period expired, notwithstanding their failure to so notify plaintiff, because ORS 12.155 is not applicble to this kind of case. All parties acknowledge that the statute applies to advance payments made by insurers upon claims by third parties against insureds. *See Duncan v. Dubin,* 276 Or 631, 556 P2d 105 (1976). However, defendants argue that ORS 12.155 does not extend to payments made by insurers to their own insureds who have sustained injury or loss. Plaintiff argues that ORS 12.155 is clear and unambiguous and, on its face, applies to both situations. The question is one of first impression.

■    In *Duncan v. Dubin, supra,* the only case in which ORS 12.155 has previously been interpreted,[6] the insurer made an advance payment to the plaintiff for property damage which resulted from an automobile accident between plaintiff and the defendant insured. Although the payment was made only on the property damage claim, the Supreme Court held that the tolling effect of ORS 12.155 also extended to plaintiff's claim for personal injuries. In *Duncan,* the Court said:

"A review of the legislative history and an examination of the language of ORS 12.155 and 41.950 reveals that the legislation had a two-fold purpose. One was to allow an insurer to make advance payments without admitting liability for a claim and to encourage such payments by eliminating any apprehension on the part of the insurer that evidence of advance payments could be admissible in court to prove liability. The other objective, which is clearly discernible, was to protect an injured party from being misled into believing that a limitation period upon his

---

[6] *But see Richards v. Smith,* 260 Or 586, 589 n 2, 491 P2d 1167 (1971):

"Oregon Laws 1971, ch 331, §5, pp 493-494, penalizes an insurer if it does not notify an insured party of the expiration of the limitation period. Written notice of the nature and effect of the payments would seem to be a desirable practice from the insurer's standpoint to meet possible charges of misrepresentation and consequent prejudice."

In context, the reference to "insured party" is an apparent typographical error and should read "injured party."

claim is no longer applicable because the insurer has, in effect, acknowledged that its insured is liable for the claim. *See* Hearings on House Bill 1299 before the Subcommittee on Financial Affairs of the House State and Federal Affairs Committee, February 24, 1971. Insurance Commissioner Bateson testified before the Senate Judiciary Committee on May 10, 1971, as follows:

> " 'Section 5 deals with a problem inherent in a complicated and extensive personal injury case where the insurance company makes advance disability payments. In that situation it would be entirely possible for the statute to run and then the company could say, "That's too bad; you didn't file suit and the statute of limitations has expired." House Bill 1299 therefore required that within 30 days after advance payment is made, there must be a notification to the payee that the statute may be running and the making of the advance payments does not suspend it. If there is no such notice, the statute is tolled between the time of the first payment and the time the first notice is actually given.'

"The final bill passed by the legislature and codified in ORS 12.155 provides that an advance payment for personal injury, death, or property damages tolls the applicable statute of limitation when written notice of the expiration date of the statute is not given by the insurer within 30 days after the payment is made. Thus, it is clear that the legislature intended to protect a person from being 'lulled' into falsely believing there is no limitation on when he can commence an action for property damage has been made. However, whether the legislature intended that an advance payment for property damage operates to suspend the statute of limitations applicable to an action for personal injury under the circumstances presented in this case cannot be ascertained with certainty from the legislative history of ORS 12.144 or 41.950 or from any additional aids in statutory construction.

"It is very likely that the legislature did not anticipate the problem presented in this case. We are of the opinion that the legislative objective of protecting injured parties who receive advance payments from being misled into not timely pressing a claim until the statute of limitations period has expired equally applies to an injured party receiving an advance payment for property damage while a claim for personal injury is pending against the same

party as a result of the same accident. Had the legislature anticipated this problem, we believe it would have required that notice of both periods of limitation be given under the circumstances here presented. A contrary holding would be at odds with the legislative intent that advance payment not mislead an injured party into believing that he need not diligently press his claim." 276 Or at 636-38.

The whole thrust of that quotation is that the statute was designed to protect *third-party* payees *and* liability insurers, while at the same time encouraging payments in advance of the determination of the extent of ultimte liability, if any. That is peculiarly a third-party situation. That is to say, the public policy considerations for encouraging advance payments to persons injured by or suffering property damage from the actions of insureds are quite different from the public policy considerations that might be involved in encouraging settlements of disputes between insurers and their insureds. The language in *Duncan* is pregnant with the former sort of considerations; it has no bearing on the latter sort of considerations. The language of *Duncan* is relevant to this case, however, even though it involved only a third-party claim, because it contains the substance of the legislative history that indicates the limited reach of the statutes.

The language of ORS 12.155 and the other related advance payment statutes[7] clearly indicates that the legislation applies when an advance payment is made by an

---

[7] ORS 18.510 provides:

"(1) If judgment is entered against a party on whose behalf an advance payment referred to in ORS 41.960 or 41.970 has been made and in favor of a party for whose benefit any such advance payment has been received, the amount of the judgment shall be reduced by the amount of any such payments in the manner provided in subsection (3) of this section. However, nothing in ORS 12.155, 41.950 to 41.980 and this section authorizes the person making such payments to recover such advance payment if no damages are awarded or to recover any amount by which the advance payment exceeds the award of damages.

"(2) If judgment is entered against a party who is insured under a policy of liability insurance against such judgment and in favor of a party who has received benefits that have been the basis for a reimbursement payment by such insurer under ORS 743.825, the amount of the judgment shall be reduced by reason of such benefits in the manner provided in subsection (3) of this section.

insurer to a person making a claim against its insured. If the words in the statute were not themselves clear on that point, the legislative history quoted in *Duncan* effectively demonstrates that the legislation was designed with only the insurer third-party situation in mind. The issue then is whether the words used will sustain a broader application of the statute.

"(3)(a) The amount of any advance payment referred to in subsection (1) of this section may be submitted by the party making the payment, in the manner provided in ORS 20.210 and 20.220 for the submission of disbursements.

"(b) The amount of any benefits referred to in·subsection (2) of this section, diminished in proportion to the amount of negligence attributable to the party in favor of whom the judgment was entered and diminished to an amount no greater than the reimbursement payment made by the insurer under ORS 743.825, may be submitted by the insurer which has made the reimbursement payment, in the manner provided in ORS 20.210 and 20.220 for the submission of disbursements.

"(c) Unless timely objections are filed as provided in ORS 20.210, the court clerk shall apply the amounts claimed pursuant to this subsection in partial satisfaction of the judgment. Such partial satisfaction shall be allowed without regard to whether the party claiming the reduction is otherwise entitled to cost and disbursements in the action."

ORS 41.950 provides:

"As used in ORS 12.155, 18.510, 41.950 to 91.980, 'advance payment' means compensation for the injury or death of a person or the injury or destruction of property prior to the determination of legal liability therefor."

ORS 41.950 provides:

"(1) Advance payment made for damages arising from the death or injury of a person is not an admission of liability for the death or injury by the person making the payment unless the parties to the payment agree to the contrary in writing.

"(2) For the purpose of subsection (1) of this section, advance payment is made when payment is made with or to:

"(a) The injured person;

"(b) A person acting on behalf of the injured person with the consent of the injured person; or

"(c) Any other person entitled to recover damages on account of the injury or death of the injured or deceased person."

ORS 41.970 provides:

"Any advance payment made for damages arising from injury or destruction of property is not an admission of liability for the injury or destruction by the person making the payment unless the parties to the payment agree to the contrary in writing."

We note, first, that ORS 12.155 contains a cross-reference to ORS 41.960 and 41.970 and refers "to each person entitled to recover damages for the death, injury or destruction * * *." ORS 41.970 refers to "damages arising from injury or destruction of property" and "admission of liability for the injury or destruction." The definition of "advance payment" in ORS 41.950 is "compensation for the injury or death of a person or the injury or destruction of propety prior to the determination of legal liability therefor." All of the terminology "sounds in tort." Moreover ORS 18.510 has *only* a tort damage claim context.[8] Plaintiff's action here is an action *on the insurance contract;* it is not an action "for damages arising from injury or destruction of property" as between this plaintiff and its insurer.

We hold that the payments made by the insurers here are not subject to the provisions of ORS 12.155.

■ Plaintiff maintains that it is entitled to a *de novo* review of the trial court's disposition of its claim that the defendants are estopped by their conduct to assert the limitation of action defense. They rely primarily on *Coldiron v. McKenzie,* 260 Or 237, 241, 490 P2d 976 (1971), and *Nedry v. Morgan,* 284 Or 65, 584 P2d 1381 (1978). In *Coldiron* the issue was whether a notice of appeal from a judgment in a law action was sufficient to give the Supreme COurt jurisdiction to review a decree issued earlier in the same case on an equitable affirmative defense of estoppel and from which no appeal was taken. The Supreme Court held that the former requirement that a party appeal from a decree *and* separately appeal from a judgment rendered in the same cause should be abrogated. The

---

ORS 41.980 provides:

"No advance payment referred to in ORS 41.960 or 41.970 is admissible in evidence in any action for damages arising from a death, injury or destruction for which any such advance payment has been made."

While this appeal was pending, ORS 41.950 to 41.970 were made a part of ORS chapter 18 by Oregon Laws 1981, chapter 892, section 79. ORS 12.155 was amended by section 85b of the same Act to conform its references to the recodified provisions. These changes have no substantive effect.

[8] For payments by insurers under uninsured motorist coverage and personal injury protection coverage, see ORS 743.786-.835.

case has no bearing on the current problem. In *Nedry* the appeal was limited to defendants' equitable counterclaim in the nature of a suit to quiet title. *De novo* review was appropriate because only the equity side of the case was pursued on appeal. That case is wholly unlike the instant one. Instead, this case is controlled by the holding in *Holman Transfer Co. v. PNB Telephone Co.,* 287 Or 387, 391-92, 599 P2d 1115 (1979). There, as here, the plaintiff in a law action alleged that the defendant was estopped to rely on the statute of limitations. There, unlike here, the trial court sustained the claim of estoppel. On appeal the defendant argued that the trial court's decision on the estoppel was subject to *de novo* review. The court said:

> "Bell's position is not correct. Although the concept of estoppel is equitable in origin, it may be relied upon in an action at law without the interposition of a court of equity. * * * "

The court went on to hold that in the absence of an objection to the sufficiency of the evidence, there was nothing before the court to review. Findings of fact by a trial court sitting as the trier of fact have the same legal effect as a jury verdict. ORCP 62F; former ORS 17.435. In its memorandum opinion the trial court here said:

> "* * * The issues herein, however, must be decided upon the basis of the burden of proof. It is axiomatic that when the evidence is equally balanced the proponent has failed to carry the burden.
>
> "* * * [P]laintiff has not established the affirmative defenses raised by its reply."

That general finding cannot be reviewed by us.[9]

Affirmed.

---

[9] As noted earlier in this opinion, St. Paul demanded an appraisal pursuant to ORS 743.648; the parties dispute whether Royal Globe also demanded an appraisal and what the scope of the appraisals would have included. The appraisal statute encompasses only disputes "as to the actual cash value or the amount of loss." The dispute between the plaintiff and its insurers about the stock and inventory loss and the equipment loss was not a dispute about value, but about coverage. The only valuation dispute was about the claim for business interruption. Therefore, it would seem that the only claims that could have been subject to appraisal were those for business interruption. Were the matter open for our determination, we would be inclined to find that Royal Globe did in fact join in the demand for appraisal.

**RICHARDSON, J.,** dissenting.

The majority concludes that the tolling effect of ORS 12.155 applies when advance payments are made by insurers to third party claimants, but does not apply when insurers make advance payments to their own insureds. In my opinion, the statute is applicable in both situations, and I therefore dissent.

In reaching its conclusion, the majority examines or touches on the following factors: (1) the language of ORS 12.155 and of other Oregon advance payment statutes; (2) the purposes of and the public policy considerations underlying the statutes; (3) a Supreme Court decision which interpreted ORS 12.155 in connection with a question unrelated to the one presented here; and (4) legislative history. I do not think it is necessary or permissible for us to look beyond the language of ORS 12.155 to resolve the issue before us, because I consider the language to be unambiguous with respect to that issue and to be inconsistent with the majority's conclusion. However, I find nothing in the majority's treatment of the other three factors

---

Assuming that both insurers demanded an appraisal, or even if only St. Paul did so, plaintiff argues that it was on the horns of a dilemma. The insurance policies, as required by ORS 743.660, contained a provision saying:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all requirements of this policy have been complied with * * *."

Plaintiff asserts that so long as the demand for appraisal was outstanding and no appraisal had been had, it was barred from suing on the policy and that, therefore, that time should be added to the limitation period. In its opening brief plaintiff seems to argue that the demand for appraisal constituted a "waiver" of the limitation. However, ORS 743.633 requires that a fire insurance policy has to contain a provision stating:

"* * * No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein."

In its reply brief plaintiff abandons any waiver claim and argues that its claim is purely one of estoppel. That being so, this portion of its estoppel claim is not reviewable either. We point out that the so-called "dilemma" was not quite so horny as plaintiff would have it. St. Paul's demand for appraisal was made in August, 1977. Royal Globe's demand, if it made one, was in December, 1977. Plaintiff made no effort to perform its obligations under the policy and the statute until May, 1978, after the year following the loss had expired. Plaintiff does not persuasively explain how its failure appropriately to respond to the appraisal demands worked an estoppel against the insurer's asserting that the limitation period continued to run during the pendency of the appraisal demands.

which persuasively supports its position, and I find that some of those other factors, when correctly viewed, militate as strongly against the holding as the statutory language does. I will discuss the four factors in the order indicated above.

### 1. *The Statutory Language.*

ORS 12.155 provides generally that its tolling effect extends to "each person entitled to recover damages for the death, injury or destruction" if the person receives the prescribed notice from the payor. An "advance payment" is defined by ORS 41.950 as "compensation for the injury or death of a person or the injury or destruction of property prior to the determination of legal liability therefor." The majority quotes the foregoing language, together with certain other language from the advance payment statutes, and states that "[a]ll of the terminology 'sounds in *tort.*'" (Emphasis added.) 55 Or App at 841. The majority then concludes that the terminology does not relate to claims by insureds against insurers because the relationship between them is *contractual.*

In my view, the majority's effort to fit the statutory language into a "tort" or "contract" cubbyhole causes it to miss the point of the language. It is correct, as the majority indicates, that words such as "death," "injury" and "destruction" are often found in tort contexts; it is also correct that those words generally do not arise in contractual settings; however, it is decidedly not correct that those words are unusual in insurance contracts or in litigation over insurance contracts.

The reason for the enactment of the advance payment statutes was *to regulate the consequences* which follow when advance payments are made *by insurers.* Although the statutes would apparently also apply to advance payments by others, they were intended to be and operate principally as insurance statutes.[1] The majority is

---

[1] Note, for example, that ORS 12.155(1) provides that the notice a payor must furnish to avoid the tolling effect of an advance payment "shall be in such form as the Insurance Commissioner prescribes." More fundamentally, if they are not unique to the settlement of insurance claims, advance payments are certainly far

not correct in characterizing the statutory language as tort terminology; the language is insurance terminology, and the words "death," "injury" and "destruction" as used in the statutes refer to losses which are covered by insurance, not to the tortious or other cause of those losses.

Nothing stated or implied in ORS 12.155 or the other advance payment statutes relates to *why* the payments are made, *i.e.,* anticipated tort or contract liability; the statutes relate to *what* is being paid for, *i.e.,* death, injury or destruction to persons or property; and the statutes do not say or suggest that their applicability depends on *who* suffers the death, injury or destruction, *i.e.,* insured persons or third parties. People insured against death, injury or destruction to their own persons or property as readily as they insure against liability for losses they cause to the persons or property of others. The advance payment statutes apply to both types of coverages.

In addition to its "tort terminology" theme, the majority *seems* to base one other point on the statutory language. Its opinion suggests that the presence of words such as "liability" and "damages" in the statutes bolsters the conclusion that the statutes distinguish between third party "tort claims" and insured "contract claims." If the majority does intend that suggestion, it loses sight of the location of the advance payment statutes to have their effects of tolling the statute of limitations for the payee and of relieving the payor from any implied admission of responsibility by reason of the payment, litigation must be initiated after an advance payment is made. Statute of limitations and admission concepts have no *operational* relevance except in the context of litigation. Words such as "liability" and "damages" are also relevant in that context,

---

more common in the insurance settlement process than in the resolution of disputes where insurance is not involved. The discussions of the statutory history in the majority opinion and in the majority's quotation from *Duncan v. Dubin,* 276 Or 631, 636-638, 556 P2d 105 (1976), demonstrate that the legislature's concern was with advance payments in the insurance setting. The majority appears to agree that the statutes are directed at advance payments by insurers, although it of course does not agree with my view about *which* advance payments by insurers are subject to the statutes.

whether the litigation is an action by an insured on a policy or a tort action by a third party against an insured.

In sum, I find nothing in the statutory language or the majority's analysis of it which supports the conclusion that ORS 12.155 applies only to advance payments on third party claims and does not apply to advance payments to insureds. The language of the statutes is unambiguous and requires the opposite conclusion.

I now turn to the extrinsic areas where the majority seeks support for its conclusion.

### 2. The Statutory Purposes and Public Policy.

The majority states that

"* * * the public policy considerations for encouraging advance payments to persons injured by or suffering property damage from the actions of insureds are quite different from the public policy considerations that might be involved in encouraging settlements of disputes between insurers and their insureds." 55 Or App at 839.

The majority does not explain in what ways the policy considerations differ. While I recognize that there are differences in the appropriate emphasis society should place on the early resolution of injury cases versus the early disposition of commercial disputes, I fail to see how those differences are relevant here. The source of the insurer's obligation is its contract with the insured, whether the claim is by a third party or the insured. More fundamentally, the policy preference for expediting the process of making injury victims whole applies with equal force to insured and third party injuries. That policy preference may explain why the advance payment statutes were written to reach only insurance coverage of personal and property damage, and were not extended by the legislature to other species of coverage. However, the policy preference does not provide a basis for distinguishing between the same kinds of losses if insured persons rather than third parties sustain them.

In any event, whatever policy considerations the majority has in mind, the only policy objective of ORS

12.155 is to prevent recipients of advance payments from being lulled into resting on their rights by a payor's apparent acknowledgment of responsibility. *See Duncan v. Dubin,* 276 Or 631, 637, 638, 556 P2d 105 (1976). There is no difference between advance payments to third parties and those to insureds for purposes of that statutory objective.[2]

### 3. *Previous Case Law.*

The majority quotes extensively from *Duncan v. Dubin, supra,* and then appears to use *Duncan* as authority or a point of departure for a number of propositions which support the conclusion that the advance payment statutes apply only to third party claims. *See* 55 Or App at 839-40. *Duncan* does not stand for those propositions. The Supreme Court's opinion speaks only of the statutes' application to third party claims because the case involved only a third party claim. To read *Duncan* as implying that the statutes do not *also* apply when advance payments are made to insureds is akin to reading a decision affirming a murder conviction as implying that robbery is not *also* illegal.

The majority's reliance on or use of *Duncan,* which deals with an unrelated issue, is not the only perplexing use of authority in its opinion. As noted by the majority, the Supreme Court stated in *Richards v. Smith,* 260 Or 586, 589, n 2, 491 P2d 1167 (1971), that "[ORS 12.155] penalizes an insurer if it does not notify an *insured party* of the expiration of the limitation period." (Emphasis added.) The majority states that the emphasized words are "an apparent typographical error and should read 'injured party.' " 55 Or App at 837, n 6. I do not suggest that the dictum in *Richards,* which was also a case involving an unrelated issue, is controlling here. Nevertheless, I think that there is little to be said for the majority's facile attribution to clerical error of a statement by the Supreme Court which directly contradicts the majority's conclusion.

---

[2] By a parity of reasoning, insurers would presumably find no difference between advance payments to insureds and those to third parties for purposes of relying on the provisions in the advance payment statutes that the payment do not constitute an admission of liability.

#### 4. *Legislative History.*

The majority states that the language it quotes from *Duncan* "contains the substance of the legislative history that indicates the limited reach of the statutes." 55 Or App at 839. Again, the majority attempts to abridge the scope of the advance payment statutes by reading the particular application of them which the court considered in *Duncan* (quoted by the majority at 55 Or App at 837-39) does not suggest that the proposed advance payment legislation was intended to apply *exclusively* to third party claims. The Supreme Court's opinion contains a number of incidental references to the fact that the statutes *do* apply when advance payments are made to third parties. There is no suggestion in the opinion that the statutes *do not* apply when payments to insureds are involved, and *Duncan's* references to the third party claimant context are attributable solely to the fact that that was the context of the case.

Consequently, if legislative history were relevant or appropriate to our inquiry, the history to which the majority points would offer scant support for its conclusion. However, it is axiomatic that we may not look to legislative history or other extrinsic sources if the statutory language we are applying is clear. In *Duncan,* the court concluded that ORS 12.155 was ambiguous or silent with respect to the question in that case, which was whether the statute of limitations was tolled as to both the plaintiff's personal injury and property damage claims when the insurer made an advance payment only for the property damage. But for reasons earlier stated, there is nothing unclear about the statutory language as it applies to the question in this case. The ambiguities here are of the majority's making and not the legislature's.

I respectfully dissent.

Thornton, Roberts and Van Hoomissen, JJ., join in this dissent.