Argued and submitted June 26, reversed and remanded in part; otherwise affirmed
September 10, 1997

Phyllis MINISCE,
*Appellant,*

*v.*

Robert W. THOMPSON
and Robert W. Thompson, D.M.D., P.C.,
*Respondents.*

(C95-0662CV; CA A93944)

945 P2d 582

Stuart M. Brown argued the cause for appellant. With him on the brief was Brown & Associates.

Karen O'Kasey argued the cause for respondents. With her on the brief was Schwabe, Williamson & Wyatt.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff appeals, assigning error to the entry of summary judgment against her complaint for dental malpractice. The trial court concluded that both of plaintiff's claims, which pertained to separate dental procedures, were barred by the statute of limitations. We affirm on one claim, which concerns the performance of a root canal, and reverse on the other claim, which concerns the placement of two crowns.[1]

The material facts are undisputed. Between May 1985 and December 1992, defendant Dr. Thompson[2] provided dental treatment to plaintiff. Two particular dental procedures are the focus of this appeal: (1) On October 3, 1990, defendant placed crowns on plaintiff's teeth 4 and 5; and (2) on September 3, 1992, defendant performed a root canal on plaintiff's tooth 20.

In November 1992, two months after defendant performed the initial root canal on tooth 20, plaintiff went to see an endodontist, Dr. Bryant, because she was still experiencing pain. Bryant told plaintiff that, because defendant did not remove all of the root, he needed to perform a second root canal on tooth 20. On November 23, 1992, Bryant performed a second root canal.

Following the second root canal, plaintiff contacted defendant and asked him to credit her bill for the root canal that he had performed on tooth 20. As plaintiff testified in her deposition,

"I didn't think I should have to pay for another root canal. Actually, I—I don't believe that I asked him to reimburse me for the new root canal because I believe I had to pay for that one. I just asked him to credit my account for the 250 that I still had owing on my bill."

---

[1] In her complaint, plaintiff styled her allegations as one claim for relief. We will treat the complaint, however, as alleging two claims for relief, as they are based upon separate incidents and separate injuries. Although plaintiff's complaint also alleged injuries to other teeth, she does not assign error to the trial court's disposition of those aspects of her complaint.

[2] Both Thompson and his professional corporation are named as defendants. For convenience, "defendant" in this opinion refers to Thompson.

On January 6, 1993, Thompson credited plaintiff's account $250.

Subsequently, plaintiff saw two different dentists for routine dental care.[3] The first of the two, Dr. Hirsch, treated plaintiff but did not suggest that her prior dental treatment had been inadequately performed. Thereafter, plaintiff began receiving dental treatment from Dr. McMorine. During an exam in September 1993, McMorine told plaintiff that her crowns were "overcontoured" for her mouth.

On June 23, 1995, plaintiff filed suit against defendant and his professional corporation alleging medical malpractice with respect to (1) defendant's placement of the crowns on October 3, 1990, and (2) defendant's performance of the root canal on September 3, 1992. Central to both of those claims was plaintiff's allegation that

> "[p]laintiff continued experiencing difficulties and pain with her teeth and defendant Thompson continued treating plaintiff's teeth. Defendant Thompson was negligent in performing the work on plaintiff's teeth and he performed the work incorrectly, causing pain and discomfort to plaintiff and allowing further deterioration of her teeth and gums."

Both defendants moved for summary judgment on the ground that those claims were barred by the two-year statute of limitations. ORS 12.110(4).

With respect to the crowns claim, defendants argued that, on the basis of the complaint alone, that claim was time barred. In particular, defendants asserted, plaintiff's pleadings merely alleged that the crowns were placed in October 1990, but pleaded no facts explaining or justifying why plaintiff did not assert her crowns claim until nearly five years later. Plaintiff responded by asserting that, under the "discovery" rule, her crowns claim was timely, because she did not learn of the alleged malpractice on teeth 4 and 5 until she saw McMorine in September 1993, less than two years before the suit was filed. As support for that proposition, plaintiff submitted her deposition testimony, which indicated that the

---

[3] Plaintiff saw different dentists because, in 1992 and 1993, she moved from Portland to Bellevue, Washington, and back to Portland again.

first time she learned that her crowns were overcontoured was when she saw McMorine.

With respect to the root canal claim, defendants argued that that claim was time barred because plaintiff knew that the root canal was improperly performed after she saw Bryant in November 1992. In response, plaintiff did not dispute that date of discovery, which was confirmed by her own deposition testimony. Instead, she argued that defendant, by crediting the outstanding $250 balance on her account for the root canal, had made an "advance payment" that tolled the statute of limitations pursuant to ORS 12.155.[4] Defendants countered that the "advance payment" tolling statute was inapposite for two reasons. First, that statute applies only to payments by *insurers*. Second, in all events, the $250 credit was not an "advance payment" because it was not "compensation for the injury or death of a person," ORS 18.500.

The trial court, without elaboration, granted defendants' motion for summary judgment in its entirety. On appeal, plaintiff raises two assignments of error, which challenge the trial court's dismissal of the crowns and root canal claims, respectively.

■■ We first consider the crowns claim. ORS 12.110(4) provides, in part:

> "An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered."

"[I]njur[y]" within the meaning of ORS 12.110(4) "consists of three elements: (1) harm; (2) causation; and (3) tortious conduct." *Gaston v. Parsons*, 318 Or 247, 255, 864 P2d 1319 (1994). Thus, under the discovery rule, "the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility

---

[4] The text of ORS 12.155 is set out below, 149 Or App at 753.

that each of the three elements (harm, causation, and tortious conduct) exists." *Id.* at 256.

Plaintiff asserts that summary judgment against the crowns claim was erroneous, because "the only evidence in the record is that [plaintiff] was not made aware until September, 1993, that her problems were caused, in part, by the overcontoured crowns fitted by [defendant]." That evidence, plaintiff contends, creates a genuine issue of material fact under *Gaston* and precludes a matter-of-law determination that discovery occurred, or should have occurred, at some point before September 1993.

■ Plaintiff is correct. In so holding, we emphasize that, in moving for summary judgment on the *crowns claim*, defendants submitted no affidavits, exhibits, or other evidentiary materials.[5] Rather, they relied solely on the alleged facial deficiency of the complaint—*i.e.*, the absence of allegations demonstrating why plaintiff could not have brought her claim within two years of the placement of the crowns. In response to defendants' motion, *plaintiff* submitted evidence, *i.e.*, her own deposition testimony in which she stated that she did not discover her injury until she saw McMorine in September 1993.

■ Plaintiff's evidentiary submission effectively amended her complaint to conform to that proof. *Hussey v. Huntsinger*, 72 Or App 565, 569, 696 P2d 580 (1985). That is, where the defendant attacks the sufficiency of the complaint via a motion for summary judgment, and the plaintiff offers evidence in response to that motion, which would justify an amended complaint, the complaint is to be deemed amended for the purposes of the summary judgment motion. *Id.* ("In this case plaintiff presented evidence * * * [which] would justify an amended complaint, and we treat the complaint as if it were amended.") *Accord Finney v. Bransom*, 143 Or App 154, 164-65, 924 P2d 319 (1996), *rev allowed* 324 Or 513 (1997) (*Hussey* rule does not "require a trial court to allow a party to amend its pleadings to add a new claim based on a new legal

---

[5] Defendants did submit an excerpt of plaintiff's deposition, describing plaintiff's root canal treatment with Bryant and the $250 credit. However, that evidence pertained solely to the timeliness of the root canal claim.

theory simply because that party produced evidence in the summary judgment hearing that supports the claim.")

Defendants contend, nevertheless, that the crowns claim was time barred because, regardless of when plaintiff *actually* discovered the injury, as a matter of law, plaintiff *should* have discovered her injury either (1) when she continued having pain following defendant's treatment, as alleged in the complaint, or (2) when plaintiff learned from Bryant in November 1992 that defendant's performance of the root canal on tooth 20 was inadequate. On this record, neither ground is availing.

Assuming the truth of plaintiff's allegation that she "continued experiencing difficulties and pain with her teeth" after defendant treated her, that unadorned allegation does not, as a matter of law, establish that plaintiff should have discovered her injury before June 1993. Even assuming, without deciding, that, in an appropriate case, the duration and extent of pain could be such that a reasonable person would have been aware of a substantial possibility that she was harmed by the defendant's tortious conduct, *see Gaston*, 318 Or at 256, the record in this case is inadequate to permit such a "matter-of-law" determination. All that the record discloses is that plaintiff experienced "difficulties and pain," without elaboration, nothing more. Whether such generic "difficulties and pain" should have sufficiently alerted plaintiff to trigger discovery under *Gaston* is a quintessential jury question.

■ Nor does plaintiff's November 1992 discovery that the root canal had been inadequately performed establish that plaintiff should, at the same time, have discovered her injury with respect to the crowns on teeth 4 and 5. A plaintiff's knowledge of one injury does not, as a matter of law, establish that he or she should have also been aware of other distinct injuries arising from distinct procedures. *See Gaston*, 318 Or at 260 ("Each claim must be analyzed separately to determine if a plaintiff knew or should have known facts that would make a reasonable person aware of a substantial possibility that the legally protected interest had been invaded."); *see also McClure v. LeRoy*, 133 Or App 229, 235, 890 P2d 425 (1995) (same). We thus conclude that the trial

court erred in entering summary judgment with respect to the crowns claim.

Turning to the root canal claim, plaintiff reiterates her argument to the trial court that, regardless of whether she discovered her injury more than two years before bring-. ing this action, defendant's $250 credit constituted an "advance payment," which tolled the statute of limitations pursuant to ORS 12.155.

ORS 12.155 provides, in part:

"(1) If the person who makes an advance payment referred to in ORS 18.520 or 18.530 gives to each person entitled to recover damages for the death, injury or destruction, not later than 30 days after the date the first of such advance payments was made, written notice of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations, then the making of any such advance payment does not suspend the running of such period of limitation. * * *

"(2) If the notice required by subsection (1) of this section is not given, the time between the date the first advance payment was made and the date a notice is actually given of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations is not part of the period limited for commencement of the action by the statute of limitations."

ORS 18.500, in turn, defines "advance payment" as

"compensation for the injury or death of a person or the injury or destruction of property prior to the determination of legal liability therefor."

Defendants argue that ORS 12.155 is inapposite here because, *inter alia*, that statute applies only when an insurer makes a payment to a third-party claimant on behalf of its insured. As support for that proposition, defendants invoke *Duncan v. Dubin*, 276 Or 631, 556 P2d 105 (1976), and *Ben Rybke Co. v. Royal Globe Insurance Co.*, 55 Or App 833, 640 P2d 620, *aff'd* 293 Or 513, 651 P2d 138 (1982). Consequently, they reason, because defendant was not an insurer, the statute does not apply.

■■ We agree with defendants that *Duncan* and, particularly, *Ben Rybke,* are dispositive. In *Duncan*, the plaintiff was involved in a car accident with the defendant, and the defendant's insurer paid for repair work on the plaintiff's car. Thereafter, the plaintiff brought an action, seeking further recovery, not only for the property damage to her car, but also for her personal injuries. When the defendant moved to dismiss the action as being barred by the statute of limitations, the plaintiff responded that the insurer's property damage payment constituted an "advance payment" under ORS 12.155, which, absent the statutorily-prescribed notice, tolled the statute of limitations as to both the property damage and personal injury claims. The defendant countered that, at least, the advance payment for property damage could not toll the limitations period for the personal injury claim.

The trial court granted partial summary judgment against the plaintiff's personal injury claim, and the Supreme Court reversed. In reversing, the court determined that ORS 12.155 was ambiguous as to whether an advance payment for property damage tolled the limitations period as to both personal injury and property damage claims, or only to property damage claims. The court then canvassed the legislative history and, based on that review, described the statute's purposes as follows:

> "One was to allow an insurer to make advance payments without admitting liability for a claim and to encourage such payments by eliminating any apprehension on the part of the insurer that evidence of advance payments could be admissible in court to prove liability. The other objective, which is clearly discernible, was to protect an injured party from being misled into believing that a limitation period upon his claim is no longer applicable because the insurer has, in effect, acknowledged that its insured is liable for the claim." 276 Or at 636.

Consistently with the legislative intent of protecting injured parties from being misled by an insurer's effective acknowledgment of its insured's liability, the court concluded that the advance payment for property damage tolled the statute of limitations for the plaintiff's personal injury claim, as well as her property damage claim.

Standing alone, *Duncan*—and particularly its recitation of references in the legislative history to insurers—would not be dispositive. Although the court obviously acknowledged that the advance payment statute applies to payments by insurers to third-party claimants, it did not hold that the statute applies *only* in those circumstances. Because the only parties before the court in *Duncan* were an insurer and a third-party claimant, the court had no occasion to determine expressly whether the statute might apply in other circumstances.[6]

In *Ben Rybke*, we made explicit what was implicit in *Duncan*. *Ben Rybke* involved a first-party dispute between an insured and his insurers. There, the plaintiff insured's business was damaged by fire, and the plaintiff made demands for payment under its fire insurance coverage with the defendants. The insurers initially made partial payments and, after coverage disputes arose, made additional payments. More than a year after the fire, the plaintiff brought an action, asserting that it was entitled to additional recovery under the policies. The defendants answered that the action was barred by *former* ORS 743.660, which required that all fire insurance policies contain a provision limiting the time for suit to one year. The plaintiff argued, in turn, that the insurers' payments suspended the operation of the one-year limitation period. The trial court rendered judgment for the defendants, and we affirmed.

In affirming, we quoted extensively from *Duncan* and determined that "the whole thrust" of the legislative history recited in *Duncan*, as well as the court's discussion of that history, was that "the statute was designed to protect *third-party* payees *and* liability insurers, while at the same time encouraging payments in advance of the determination of the extent of ultimate liability, if any." 55 Or App at 839 (emphasis in original). Indeed, we found that *Duncan* and the

---

[6] *Cf. Ben Rybke Co. v. Royal Globe Insurance Co.*, 55 Or App 833, 847, 640 P2d 620, *aff'd* 293 Or 513 (1982) (Richardson, J., dissenting) ("The Supreme Court's opinion speaks only of the statutes' application to third party claims because the case involved only a third party claim. To read *Duncan* as implying that the statutes do not *also* apply when advance payments are made to insureds is akin to reading a decision affirming a murder conviction as implying that robbery is not *also* illegal.") (emphasis in original).

legislative history quoted there "demonstrate[ ] that the legislation was designed with only the insurer third-party situation in mind." 55 Or App at 840.

On that basis, and on the basis that ORS 12.155 and related statutes use language that " 'sounds in tort,' " rather than in contract, 55 Or App at 841, we held that payments by the defendant insurers to the plaintiff insured did not constitute "advance payments" under ORS 12.155, and, thus, did not toll the limitations period. The Supreme Court affirmed our judgment in *Ben Rybke* on different grounds, *Ben Rybke Co. v. Royal Globe Insurance Co.*, 293 Or 513, 651 P2d 138 (1982), which made it unnecessary for that court to reach the question that we decided and that is pertinent here. However, the Supreme Court's decision was not inconsistent with our answer to that question. To whatever extent the posture of the Supreme Court's decision might affect the *precedential* status of our opinion in *Ben Rybke*, we now reiterate and adhere to our conclusion that the advance payment statutes do not toll the statute of limitations outside the setting of third-party claims against insurers.[7]

Here, defendant was not an insurer. Consequently, the $250 credit was not an advance payment that tolled the statute of limitations. The trial court did not err in entering summary judgment against the root canal claim.

Dismissal of crowns claim reversed and remanded; otherwise affirmed.

---

[7] It is at least arguable that, if we were construing ORS 12.155 as a matter of first impression, the methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), *might* preclude consideration of the legislative history that was emphasized in *Duncan* and which, by extension, was central to *Ben Rybke*. However, we are not writing on a blank slate: The Supreme Court explicitly addressed the legislative history in *Duncan*, and our analysis and construction in *Ben Rybke* was predicated upon, and thoroughly consistent with, that discussion.