Argued and submitted July 7, 2005, affirmed February 1, petition for review allowed May 31, 2006 (340 Or 672)

# Brenda HAMILTON,
## *Appellant,*

*v.*

# George PAYNTER,
dba Seahawk Seafood;
Carvalho Fisheries, Inc.;
and William Carvalho,
*Respondents.*

## 03CV0551; A125029

129 P3d 203

Manuel C. Hernandez argued the cause for petitioner. With him on the opening brief was Hernandez & Associates, LLC. On the reply brief was David M. Hernandez.

Camille Tourje argued the cause for respondent George Paynter, dba Seahawk Seafood. On the brief was Kent W. Day.

Robert A. Ford argued the cause for respondents Carvalho Fisheries, Inc., and William Carvalho. With him on the brief was Kurtz, Ford & Johnson, LLP.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

PER CURIAM

Wollheim, J., concurring.

## PER CURIAM

Plaintiff appeals in this personal injury case after the trial court ruled under ORCP 21 that her claim was barred by the statute of limitations in ORS 12.110(1). On appeal, plaintiff argues that the statute was tolled by a $1,000 payment made by defendant Paynter during the period of limitations, invoking the provisions of ORS 12.155. In *Minisce v. Thompson*, 149 Or App 746, 945 P2d 582 (1997), we held that ORS 12.155 was applicable only when an advance payment is made by a third-party insurer, relying on *Duncan v. Dubin*, 276 Or 631, 556 P2d 105 (1976), *Ben Rybke Co. v. Royal Globe Insurance Co.*, 55 Or App 833, 640 P2d 620, *aff'd*, 293 Or 513, 651 P2d 138 (1982), and our review of the legislative history, as discussed in those cases. In explaining how our decision in *Ben Rybke Co.* led to our conclusion in *Minisce*, we observed,

> "In affirming, we quoted extensively from *Duncan* and determined that the whole thrust of the legislative history recited in *Duncan,* as well as the court's discussion of that history was that 'the statute was designed to protect *third-party* payees *and* liability insurers, while at the same time encouraging payments in advance of the determination of the extent of ultimate liability, if any.' 55 Or App at 839 (emphasis in original). Indeed, we found *Duncan* and the legislative history quoted there 'demonstrate[ ] that the legislature was designed with only the insurer third-party situation in mind.' 55 Or App at 840."

*Minisce*, 149 Or App at 755-56.

We adhere to our reasoning in *Minisce* in this case.

Affirmed.

**WOLLHEIM, J.,** concurring.

On August 19, 2001, plaintiff was driving her car in Coos County. While stopped in traffic, plaintiff's car was hit in the rear by a forklift driven by defendant George Paynter and owned by defendants Carvalho Fisheries, Inc., and William Carvalho. Plaintiff suffered injuries as a result of the accident. On November 2, 2001, defendants Paynter and

Carvalho paid plaintiff $1,000. Plaintiff signed a receipt, which stated:

"November 2, 2001 received from George Paynter and William Carvalho in the amount of $1,000. This is partial payment, money is to be for medical bills for Brenda Hamilton who was injured on August 19, 2001 when her car was in an accident with Mr. Paynter."

Plaintiff filed her complaint on November 28, 2003, more than two years after the accident. Defendants moved to dismiss the complaint because the complaint was filed after the two-year statute of limitations ran. ORS 12.110(1). Plaintiff argued that the claim was not barred by the statute of limitations because ORS 12.155, the advance payment statute, tolled the statute of limitations. The trial court granted the motion to dismiss and plaintiff appealed from the general judgment dismissing the complaint.

Resolving whether the statute of limitations was tolled as a result of the advance payment made by defendants is a matter of statutory construction. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). The two statutes involved are ORS 12.110(1) and ORS 12.155. ORS 12.110(1) provides, in part:

"An action for * * * any injury to the person * * * shall be commenced within two years * * *[.]"

ORS 12.155 provides, in part:

"(1)  If the *person* who makes an advance payment * * * gives to each *person* entitled to recover damages for the death, injury or destruction, not later than 30 days after the date the first of such advance payments was made, written notice of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations, then the making of any such advance payment does not suspend the running of such period of limitation.

"(2)  If the notice required by subsection (1) of the section is not given, the time between the date the first advance payment was made and the date a notice is actually given of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations is not part of the period

limited for commencement of the action by the statute of limitations."

(Emphasis added.)

The plain reading of ORS 12.110(1) establishes that plaintiff's complaint was filed too late. Only if ORS 12.155 tolled the running of the two-year statute of limitations would plaintiff's complaint be timely filed. In this case, ORS 12.155 should have tolled the running of the two-year statute of limitations. Subsection (1) requires a person who makes an advance payment to the person entitled to recover damages for an injury to provide to the person receiving the advance payment written notice of the date of expiration of the period of limitations for the commencement of an action for damages. If the requisite notice is provided, then the advance payment does not suspend the running of the statute of limitations. In other words, if defendants had given plaintiff written notice that the statute of limitations would expire two years after the accident, then there would be no question that the advance payment would not have suspended the running of the statute of limitations and that plaintiff's complaint would therefore be time-barred. However, subsection (2) tolls the statute of limitations *"if the notice required by subsection (1) of the section is not given."* (Emphasis added.) Defendants did not give plaintiff the written notice required by ORS 12.155(1) when they made the November 2, 2001, advance payment. Accordingly, ORS 12.155(2) should have tolled the running of the statute of limitations and plaintiff's action should not have been dismissed.

Yet this court is affirming the trial court and I am concurring rather than dissenting. I concur based on principles of *stare decisis* because this court has decided this issue in *Minisce v. Thompson*, 149 Or App 746, 945 P2d 582 (1997). This court's decision in *Minisce* relies primarily on two prior decisions, *Duncan v. Dubin*, 276 Or 631, 556 P2d 105 (1976), and *Ben Rybke Co. v. Royal Globe Insurance Co.*, 55 Or App 833, 640 P2d 620, *aff'd*, 290 Or 513, 651 P2d 138 (1982),[1] in

---

[1] *Ben Rybke Co.* was affirmed by the Supreme Court for reasons unrelated to this opinion.

interpreting ORS 12.155 in a manner inconsistent with the words of the statute.[2]

In *Duncan*, the Supreme Court considered whether an advance payment by the defendant's insurance company for property damage tolled the statute of limitations for the plaintiff's personal injury claim.

After examining the legislative history of ORS 12.155, the court held that the statute had a "two-fold purpose," stating:

> "One was to allow an insurer to make advance payments without admitting liability for a claim and to encourage such payments by eliminating any apprehension on the part of the insurer that evidence of advance payments could be admissible in court to prove liability. The other objective, which is clearly discernible, was to protect an injured party from being misled into believing that a limitation period upon his claim is no longer applicable because the insurer has, in effect, acknowledged that its insured is liable for the claim."

*Duncan*, 276 Or at 636-37. Because of the "legislative objective of protecting injured parties," the court interpreted ORS 12.155 to toll the statute of limitations as to any claim for damages, whether for property damage or personal injury, when any advance payment is made to the plaintiff without the requisite notice. *Id.* at 637-38. Who made the payment was not an issue in *Duncan*.

In *Ben Rybke Co.*, this court considered whether the provisions of ORS 12.155 applied to an advance payment without the requisite notice by an insurer to its insured. Relying on the Supreme Court's description of the legislative history of ORS 12.155 in *Duncan*, we held that "the statute was designed to protect *third-party* payees *and* liability insurers, while at the same time encouraging payments in advance of the determination of the extent of ultim[a]te liability, if any."

---

[2] Because the Supreme Court did not directly resolve this issue in its decisions in *Duncan* and *Ben Rybke Co.*, my concurrence is based on principles of *stare decisis* and *not* because the prior interpretation of the statute "becomes part of the statute as if it were written into the law at the time of its enactment." *Holcomb v. Sutherland*, 321 Or 99, 105, 894 P2d 457 (1995).

55 Or App at 839 (emphasis in original). In addition, this court looked at the context of the statute, namely, its references to other statutes that "sound in tort," and not in contract.[3] Ultimately, we held that ORS 12.155 did not apply to a dispute between an insured and its insurer. As in *Duncan*, who made the payment was not an issue in *Ben Rybke Co.*

In *Minisce*, this court relied on *Duncan* and *Ben Rybke Co.* to hold that ORS 12.155 tolls the statute of limitations *only* in the context of "third-party claims against insurers." 149 Or App at 756. There, the defendant performed root canal surgery on the plaintiff and placed crowns on some of the plaintiff's teeth. A couple of months after the root canal surgery, the plaintiff was still experiencing pain. Due to the pain, the plaintiff went to see an endodontist, who informed her that the defendant had not removed all of the root. The plaintiff contacted the defendant to complain, and was credited by the defendant for the remaining balance on her bill. Eight months later, the plaintiff discovered that her crowns were "overcontoured" for her mouth. Two years after that discovery, the plaintiff filed her action. 149 Or App at 748-49.

The defendant moved for summary judgment, arguing that the plaintiff's claim was time-barred. The plaintiff admitted that her discovery of her claim on the root canal was beyond the two-year statute of limitations, but argued that ORS 12.155 tolled the statute of limitations due to the defendant's advance payment, the crediting of her account, without the requisite notice. The trial court granted the defendant's motion for summary judgment. *Id.* at 749-50.

The plaintiff appealed, arguing that ORS 12.155 tolled the statute of limitations due to the defendant's advance payment. Relying on *Duncan* and *Ben Rybke Co.*, we rejected the plaintiff's argument and held that "the advance payment statutes do not toll the statute of limitations outside the setting of third-party claims against insurers." *Id.* at 756.

*Minisce,* then, effectively reads the term "person" in ORS 12.155 to exclusively mean "insurer." Therefore, ORS 12.155(2) does not apply because the advance payment here

---

[3] *Former* ORS 41.960 (1979), *renumbered as* ORS 31.560 (2003), and *former* ORS 41.970 (1979), *renumbered as* ORS 31.565 (2003).

was made by defendants and not by defendants' insurers. If I were writing on a clean slate, I would reach a different conclusion.

First, I would not limit the meaning of the word "person" to include only insurers. "Person" is defined in ORS 174.100(5) as "includ[ing] individuals, corporations, associations, firms, partnerships, limited liability companies and joint stock companies[,]" and that statute directs that definition to be used "unless the context or a specially applicable definition requires otherwise[.]" By the plain text of ORS 12.155(1), it makes no sense to limit the meaning of "person" to an insurer. "Person" is used again in the same sentence to refer to whom the advance payment is made; surely the use of that term does not also refer to an insurer or else the statute would make absolutely no sense. *See PGE*, 317 Or at 611 ("[U]se of the same term throughout a statute indicates that the term has the same meaning throughout the statute."). Why would the legislature use the same term twice within the same sentence but intend that term to have different meanings? In addition, limitation of the first use of the term "person" to mean an insurer would be a violation of the legislative directive "not to insert what has been omitted." ORS 174.010. If the legislature meant for ORS 12.155 to apply only to insurers, then the legislature would have used "insurer" and not "person."

Second, a review of the legislative history of ORS 12.155 supports my understanding of the word "person." ORS 12.155 was first presented to the House State and Federal Affairs Committee on February 24, 1971, as House Bill (HB) 1299. That bill was presented by C. C. Bateson, the insurance commissioner. After the insurance commissioner finished his testimony regarding the effect of HB 1299, the committee heard testimony from M. L. Enfield of the Oregon State Bar Procedure and Practice Committee regarding a similar bill, House Bill (HB) 1349, that had also been drafted to address advance payments. Enfield testified that, "The first three sections of HB 1349 provide a framework where an insurance company may, *or an individual who is at fault or thinks he is at fault*, make advance payments to an injured party[.]" Tape Recording, House Committee on State and Federal Affairs, HB 1349, Feb 24, 1971, Tape 3, Side 2 (emphasis added).

The committee reconvened on March 18, 1971, and, due to the similar nature of the bills, decided to table HB 1299 and pass HB 1349. Committee Report, HB 1349, Mar 18, 1971. The committee favored the language in HB 1349, but was concerned that the bill did not contain a tolling provision similar to that in HB 1299. Tape Recording, House Committee on State and Federal Affairs, HB 1349, Mar 18, 1971, Tape 8, Side 1 (statement of Rep Les Walter AuCoin). As a result, the committee voted in favor of amending HB 1349 by inserting the provisions of HB 1299 concerning tolling. Committee Report, HB 1349, Mar 18, 1971.

On March 19, 1971, the committee met again and, this time, decided to table HB 1349 and pass HB 1299 instead. Although the reasons for doing so are unclear, when viewed as a whole, the legislative history shows that the legislature at least contemplated that advance payments could be made by individuals, and did not expressly reject that notion.

Third, even if the legislature actually intended ORS 12.155 to apply only to advance payments made by insurers, the language of the statute does not support that intention. In *Deluxe Cabinet Works v. Messmer*, 140 Or App 548, 915 P2d 1053 (1996) (*Messmer II*), this court interpreted the words of a statute as adopted even when that interpretation conflicted with the known legislative intent. In that case, the issue was whether a subsequently enacted statute had the effect of overruling our prior decision in *Messmer v. Deluxe Cabinet Works*, 130 Or App 254, 881 P2d 180 (1994) (*Messmer I*).

In *Messmer I*, the employer accepted the claimant's claim for thoraco-cervical strain and myofascitis. A month later, the claimant was diagnosed with degenerative disc disease in his neck for which the employer authorized surgery but neither accepted nor denied compensability for the neck condition. The claim was closed by determination order awarding the claimant permanent partial disability for both the accepted condition and the degenerative disc disease in the neck. Some time later, the claimant's physician asked the employer to authorize surgery for progressive degenerative changes to the claimant's cervical spine. The employer

denied compensability due to the lack of a causal connection between the accepted condition and the degenerative changes to the cervical spine. 130 Or App at 256.

The claimant sought judicial review, arguing that the employer's failure to deny compensability and seek review of the determination order precluded the employer from denying the surgery. We agreed with the claimant, holding that, although the claim had not been accepted, claim preclusion barred the employer from arguing that the degenerative disc condition was not part of the compensable claim. *Id.* at 258.

In *Messmer II*, the employer argued that the legislature amended *former* ORS 656.262(10) (1995) to overrule our decision in *Messmer I*, and that the amendment applied retroactively to the claimant's case. *Former* ORS 656.262(10) (1995), *amended by* Or Laws 1997, ch 605, § 1, was amended to read:

> "Merely paying or providing compensation shall not be considered acceptance of a claim or an admission of liability, nor shall mere acceptance of such compensation be considered a waiver of the right to question the amount thereof. *Payment of permanent disability benefits pursuant to a determination order or litigation order shall not preclude an insurer or self-insured employer from subsequently contesting the compensability of the condition rated therein, unless the condition has been formally accepted.*"

(Emphasis added to amendment.) In support of its argument, the employer cited testimony from the Senate Labor Committee, which, in the employer's view, explained that the effect of the amendment would be to overrule *Messmer I*. 140 Or App at 551-52. Nonetheless, we held that the language of the statute failed to implement the legislature's intended effect, stating that:

> "The language of ORS 656.262(10), as amended, says nothing about the preclusive consequences of an employer's failure to appeal a determination order. The only subject of the sentence is the 'payment of permanent disability benefits.' The act of payment, the statute now says, does not preclude an employer from subsequently contesting compensability. Employer urges us to read '[p]ayment of permanent

disability benefits *or failure to appeal a determination order*.' The emphasized language, however, is not part of the enacted statute, and we are not at liberty to add it. Nor can the words 'payment of * * * benefits' reasonably be construed by themselves to contain the missing words employer seeks to have inserted. Payment of benefits is one thing; failing to appeal a determination order is another."

140 Or App at 553 (emphasis in original).

The same reasoning applies in this case. The legislature could have said "insurer" instead of "person" if it intended ORS 12.155 to apply only to advance payments made by insurers. Even if the legislature clearly intended ORS 12.155 to apply only to advance payments made by an insurer, and I am not sure that it did, the language of the statute does not reflect that intent, and it is not our place to add or delete words to the the advance payment statute. ORS 174.010.

In conclusion, I concur because this court has previously interpreted ORS 12.155 to apply only to advance payments by insurers. However, if I were writing on a clean slate, I would interpret the plain text of ORS 12.155, specifically the word "person," as to include the advance payment made by defendants in this case.

I concur.